(No. 47404.–

MOLEX, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(John Archer, Appellee.)

*Opinion filed November 25, 1975.*

CREBS, J., took no part.

William P. Landon, of Chicago, for appellant.

Arnold, Hennessy, Liss and Reda, of Chicago (Thomas M. Doyle, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

On February 13, 1971, John Archer suffered burns to his right hand while working as a foreman for Molex, Inc. An application for adjustment of claim was filed with the Industrial Commission on October 4, 1972. Respondent employer contended before the arbitrator that the application was barred by the one-year statute of limitations. The arbitrator entered an award for the employee. The Industrial. Commission affirmed the decision of the arbi-·

trator and the circuit court of Cook County confirmed the decision of the Industrial Commission.

The sole issue involved in this case is whether the application for adjustment was timely filed. Unless a claim is filed within one year after the date of accident or one year after the last payment of compensation, if compensation has been paid, it is barred. (Ill. Rev. Stat. 1971, ch. 48, par. 138.6(c)(3).) We have held, however, that this requirement is not jurisdictional but that the statute is one of limitations against which the defenses of waiver and estoppel may properly be raised to nullify its effect. *Pantle v. Industrial Com.,* 61 Ill.2d 365; *Pope v. Industrial Com.,* 53 Ill.2d 560.

On February 15, 1971, the Monday following his injury, Archer went to his employer's office to see Ralph Kalmar, the manager. Kalmar made an appointment for Archer with Dr. Christensen. The next day Archer saw Dr. Christensen and continued to see him over a two-month period. He also received medical treatment from Dr. Beinoris and from the Lombard Chiropractic Clinic.

Archer's subsequent phone calls to Kalmar went unanswered. On September 18, 1971, he wrote to Kalmar and requested the name of the workmen's compensation insurance carrier. In this letter he stated "Will you please treat this as urgent as all this delay they are likely to close the books on the claim." He received a response informing him of the name of the insurance carrier, its phone number and his claim number.

In late November, Miss E. J. Ferrans of Underwriters Adjusting Company, Molex's compensation representative, notified Archer that he had an appointment to see Dr. John Bell. Dr. Bell made an examination on December 17, 1971, and forwarded his findings to Underwriters four days later.

On January 3, 1972, Underwriters Adjusting Company sent Archer a letter telling him that Dr. Bell's report had been received and requesting that he call regarding his

claim. Two days later Miss Ferrans phoned Archer. She informed him of Dr. Bell's report and offered a settlement of $1,738.50 representing 14% loss of use of the right hand. When Archer resisted the offer, Miss Ferrans suggested that he come down to the company's office and permit its doctor to examine him and possibly they could make a better offer. Archer agreed to do this. Miss Ferrans indicated she would make the appointment and call him back. On January 7 Archer wrote Miss Ferrans confirming their phone conversation of January 5. He called her on several occasions thereafter, but each time she was out of the office and did not return his calls. On January 30 he wrote Miss Ferrans and inquired concerning the receipt of a final report from Dr. Christensen. In closing he stated: "I will await for you to contact me regarding the next steps to be taken." On February 27 he again wrote Miss Ferrans and again referred to a discussion he had had with her sometime after the settlement offer had been made in which she had informed Archer that she was waiting for a report from Dr. Christensen.

On March 17 Archer wrote to John Rider at Underwriters Adjusting Company in which letter he refers to a phone conversation with Rider "of last week" in which they had discussed Dr. Bell's report and Dr. Christensen's report which Underwriters had apparently by that time received. The letter stated that Rider had informed Archer that Dr. Christensen had "put in a negative report." Archer stated that he had been unable to contact Dr. Christensen, who was out of town, and that he could not make any decision until after he could talk to the doctor. A few days later Archer called Rider to inquire whether he had received the March 17 letter. Rider then informed him that the statute of limitations had run. Archer called his attorney the same day. A few weeks later he executed and returned to his attorney the Industrial Commission forms which had been sent to him. His attorney, however, did not file the application for adjustment until October 4,

1972.

At the hearing before the arbitrator Archer was the only witness to testify. In addition to his testimony copies of the letters referred to herein were introduced into evidence. Also a medical report was introduced in support of his claim. No witness testified for the respondent. The respondent offered as evidence a copy of a letter which Archer had written to Miss Ferrans dated May 11, 1972, in which Archer stated he had at last been able to talk to Dr. Christensen and in which he offered to settle his claim for $2500. The respondent also introduced into evidence a medical report of Dr. Bell. During Archer's testimony he stated during cross-examination that the conduct of Underwriters had lulled him into a false sense of security. He also stated that he felt that they should have advised him about the statute of limitations because he was "waiting to see their doctor."

Implicit in the decision of the Industrial Commission is a finding that the respondent was either estopped from asserting the statute of limitations or had waived its right to do so. Plainly, Archer had discussed settlement with Miss Ferrans and had been led to believe that a further offer would be forthcoming after another examination by the insurance company's doctor. He reasonably believed that she would make arrangements for the physical examination. Also on January 30, 1972, only two weeks before the expiration of the limitation period, he informed her that he was waiting for her to call and tell him what he should do. Archer was clearly waiting for further instructions from Underwriters and he was never informed until after the expiration of the limitation period that no further offer would be made. He had relied upon Underwriters' conduct to his detriment and the conduct was such as to reasonably induce this reliance. A finding by the Industrial Commission that the claimant has established the defense of estoppel to the statute of limitations is not contrary to the manifest weight of the evidence.

When settlement negotiations are conducted as close to the expiration of the limitation period as they were in this case notice of the termination of negotiations should be given to the claimant a reasonable length of time before the expiration date so that he may have adequate time to prepare and file an application for adjustment of claim. Whether or not the result is intended, it is manifestly unfair for an employer or its insurance carrier, being versed in the operations of the Workmen's Compensation Act, to lead the employee to the very brink of the expiration date and then precipitously abandon him too late for him to preserve his claim.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.