(No. 48100.—

GEORGE YOUNG & SONS, INC., *et al.,* Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Raymond E. Miller, Appellant.)

*Opinion filed April 5, 1977.*

RYAN and UNDERWOOD, JJ., dissenting.

Moehle, Reardon, Smith & Day, Ltd., of Washington (Melvin O. Moehle, of counsel), for appellant.

Baylor & Noetzel, of Peoria, for appellees.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Here the issue is whether a misrepresentation made by a claim agent will estop the assertion of the defense of the statute of limitations provided by section 6(c)(3) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c)(3)).

In a proceeding under the Act, claimant, Raymond E. Miller, received an award for an injury occurring on

January 12, 1970, when, working as a painter, he fell from a ladder and suffered a comminuted fracture in the heel bone of each foot. The treating doctor made reports to Travelers Insurance Company, his employer's insurance company, throughout the year 1970, in which he discussed the claimant's injury as "severe heel fractures" and observed that the condition should result in "more disability." The insurer also had a copy of claimant's hospital records, which described his condition, as well as treatment. Claimant continued to receive independent medical attention until March 1973. Then the prognosis, according to the medical evidence, was not good, and claimant would eventually require a fusion of one or both ankle joints with subsequent disability of four to six months.

On January 29, 1971, claimant discussed his injury with a representative of Travelers Insurance Company. The claim agent consulted a small booklet, and after looking at it, incorrectly advised claimant that $3,309.24 was the maximum figure for his disability. Claimant accepted this representation as true and signed a receipt. The settlement was not approved by the Industrial Commission. There were no later payments. Claimant did not file his application for adjustment of claim until November 1, 1972, more than one year later. He had retained an attorney at the suggestion of a treating doctor.

The employer and Travelers filed a motion to dismiss, raising the limitations defense. The arbitrator did not expressly rule on the motion, but implicitly denied it by proceeding to a hearing and decision on the merits of the claim. The employer and Travelers did not present any evidence at the hearing, but stood on their motion to dismiss. Accordingly, claimant's evidence stood uncontradicted. Claimant's contention is that respondents are estopped to raise the limitations defense because of his conversation with a claim agent for Travelers in January 1971.

In a letter to claimant's attorney, the insurance company stated that the $3,309.24 paid claimant was based on assumed 17½% loss of use of the left foot and of the right foot. The arbitrator, on the other hand, found that the permanent loss of use of the left foot was 40% and that of the right foot 30%. The arbitrator also found that claimant was entitled to receive an additional sum of $5,674.50 over and above the amount already received. The Industrial Commission affirmed the arbitrator's award, but the circuit court reversed the award on the basis of the statute of limitations.

Incisively in point is *Kaskaskia Constructors v. Industrial Com.* (1975), 61 Ill. 2d 532, wherein this court stated in a similar situation:

> "Petitioner's uncontroverted testimony shows that the representatives of respondent's insurance carrier discussed his claim with him and did not advise him that the limitations period was about to run. The fact that petitioner withheld filing an application for adjustment of claim until receipt of the letter denying liability would support a finding that petitioner relied upon the conduct of the insurance carrier's representatives. Implicit in the decision of the Industrial Commission is the finding that by this conduct respondent was estopped to assert the defense of limitations and we cannot say that the finding is against the manifest weight of the evidence." (61 Ill. 2d 532, 535.)

Here we agree that the award of the Industrial Commission is not contrary to the manifest weight of the evidence.

Again, in *Pope v. Industrial Com.* (1973), 53 Ill. 2d 560, claimant was injured on November 17, 1960. She received temporary, total disability payments until January 6, 1962. She did not file an application for adjustment of claim until March 6, 1963, although section 6(c) of the Workmen's Compensation Act (Ill. Rev. Stat. 1959, ch. 48,

par. 138.6(c)) required the filing of such application within one year from the date of the last payment of compensation.

The Act further provides that the furnishing of medical services is not the payment of compensation (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(a)). In *Pope*, the Industrial Commission made these findings:

> " * * *
>
> 6. That the last payment of temporary compensation by the respondent was made by check issued January 8, 1962.
>
> 7. That in response to petitioner's written request, the respondent issued a draft in the amount of $96.94 to the petitioner for reimbursement of medical expenses; this draft did not constitute payment of temporary compensation benefits.
>
> 8. That subsequently, petitioner's attorney inquired of a representative of the respondent if this (the draft for $96.94) was the last compensation payment that she received and he said, 'yes'.
>
> 9. That petitioner's attorney never saw nor attempted to see any drafts issued to the petitioner but relied on the conversation with the respondent's representative in filing the claim.
>
> 10. That an Application of Adjustment of Claim was filed in this cause on March 6, 1963, more than one year from the date of the last payment of temporary compensation.
>
> 11. That the respondent raised the defense of the statute of limitations at the initial hearing on arbitration in September of 1963 and at all appropriate times thereafter.
>
> 12. That therefore the Commission is without jurisdiction because the Application for Adjustment of Claim was not filed within the time provided under Section 6(c) of the Illinois Workmen's Compensation Act." (53 Ill. 2d at 562-63.)

On *certiorari,* the circuit court confirmed the award.

Claimant Pope's attorney testified that the adjuster told him that $96.94 paid claimant for her medical expense was the last compensation payment made, al-

though it was reimbursement for medical expenses. Such was the sole misrepresentation. In *Pope,* unlike the instant situation, the employer introduced evidence to controvert petitioner's claim. This court set aside the findings of the Industrial Commission as contrary to the manifest weight of the evidence, observing:

> "It is thus clear that all of the elements necessary for estoppel are present in this case. The representation was one of a fact already within the adjuster's knowledge, and it can hardly be supposed that he did not intend that it should be relied upon. We conclude, therefore, that the finding of the Commission, implicit in its order, that the respondent was not estopped by its conduct to assert the defense of limitations was contrary to the manifest weight of the evidence." 53 Ill. 2d at 565.

The misrepresentation made here compels the same result. While the term "estoppel" is employed to describe such conduct in workmen's compensation cases, it is more correctly a species of fraud. The misrepresentation relied upon by claimant was made with the obvious purpose of inducing the claimant to follow a certain course of conduct, namely, to accept the amount offered without the approbation of the Industrial Commission.

We note in passing that section 23 of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.23) now provides:

> "*** any employer *** who shall enter into any payment purporting to compromise or settle the compensation rights of an employee *** without first obtaining the approval of the Industrial Commission as aforesaid shall be barred from raising the defense of limitation in any proceeding subsequently brought by such employee, personal representative or beneficiary."

This provision was introduced into the Act by an amendment which became effective July 1, 1975, after the decision of the Commission and the circuit court had been rendered, but before the notice of appeal to this court was

filed. Claimant's brief does not suggest that the amendment should be applicable here. In view of our holding we need not consider that question.

The judgment of the circuit court of Peoria County is reversed, and the award of the Industrial Commission is reinstated.

*Judgment reversed; award reinstated.*

MR. JUSTICE RYAN, dissenting:

I dissent from the opinion of the court primarily for three reasons. First, the opinion assumes facts that are not in the record. Second, the opinion ignores the accepted principles of estoppel and waiver which have heretofore been the reasons assigned for not adhering to the statutory limitation periods in compensation cases. Third, the opinion in effect creates an open end statute of limitations once an estoppel has been established.

First, as a basic premise for its decision the court uses some conclusional language not supported by the record either factually or inferentially. The opinion on several occasions uses the word "misrepresentation" and assumes that the claim agent for Travelers Insurance Company misrepresented something to the claimant and "incorrectly advised claimant that $3,309.24 was the maximum figure for his disability." There is no evidence to support either the conclusion that a misrepresentation had been made or that the advice was incorrect.

Following his injury in January 1970, the claimant returned to work on September 2, 1970. He had been paid weekly disability benefits by Travelers until he returned to work. He had been under the care of Dr. Watson, who had made periodic reports to Travelers in which he described the prognosis as "guarded" in one report and as "good" in another. Dr. Watson never advised Travelers that a fusion of one or both ankles was a possibility. After the claimant returned to work, Dr. Watson examined him on September 14, 1970, and again on December 4, 1970, and on each

occasion sent reports to Travelers. In January 1971, following the December 4, 1970, report, the claim agent for Travelers contacted the claimant. Claimant never saw a doctor for his injuries thereafter until he again went to see Dr. Watson about 11 months later in December 1971. He then contacted Dr. Watson because he was still having pain in his feet and he was having difficulty walking on rough surfaces. At that time Dr. Watson told him of the possibility of a fusion on one or both feet.

There is nothing in the record that would indicate that the compensation paid to claimant in January 1971 was not full compensation for the disability that existed at that time. The claimant himself did not question the adequacy of the amount, and continued to work without consulting a doctor until December 1971. About seven months later, at the suggestion of Dr. Stuttle, to whom he had been referred, he contacted an attorney, and finally an award was made based on a 40% loss of use of the left foot and 30% loss of use of the right foot. The fact that disabilities of this extent were found to exist at that time does not indicate that a settlement based on a 17½% loss of use of both feet was not adequate for the condition that existed almost two years earlier in January 1971, which was before Dr. Watson had indicated the possibility of a fusion. It is not accurate to characterize the discussion the claim agent had with the claimant as a "misrepresentation" or to say that he incorrectly advised the claimant of the value of his claim.

My second objection to the opinion relates to its application of the principle of estoppel. The opinion relies upon *Kaskaskia Constructors v. Industrial Com.* (1975), 61 Ill. 2d 532, and *Pope v. Industrial Com.* (1973), 53 Ill. 2d 560. These cases are inapposite. In each there was an alleged representation made to the claimant shortly before the statute of limitations ran. In reliance upon the representation, claimant took no action to protect the claim. In the case before us the statute of limitations did

not start to run until after the alleged representation. It was on the basis of this representation that the settlement was made. The check in payment of the settlement arrived a few days later. This check constituted the last payment of compensation, and the claimant, under the statute, had one year thereafter within which to file his claim. (Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c)(3).) No claim was filed until November 1972, about 21 months later.

In *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, as in this case, there was an extended delay in filing a claim. The claimant took no steps to ascertain if a written claim had to be filed to collect compensation. This court stated:

> "To prevail on the theory of estoppel it was incumbent upon the petitioner to prove that he had relied upon some acts or representation of the respondent and had no knowledge or convenient means of knowing the true facts." (61 Ill. 2d 365, 371.)

Thus, it is not enough for one relying on estoppel to establish only the reliance upon a representation made to him. He also must prove that he had no knowledge of the true facts or a convenient means of knowing them.

The majority opinion ignores this additional requirement, which assumes a degree of importance in cases involving extended delays as in *Pantle* and in this case. Here, the claimant did nothing to ascertain whether the compensation he received was adequate. Even in December 1971, when he first learned from Dr. Watson of the possibility of a fusion, he did nothing to ascertain the adequacy of his compensation even though he was still well within the limitation period. It was not until November 1972, 11 months after he learned of the possibility of a fusion and about 21 months after the last payment of compensation, that he filed his claim. He has made no attempt to show that he did not know or that he did not have a convenient means of knowing or that he was prevented from ascertaining that he had to file a claim

within one year after the last payment. Nor did he attempt to show that he did not know that his disability was more extensive than that for which he had been compensated. In fact the only evidence on the subject is to the contrary, because the visit to Dr. Watson two months before the expiration of the limitation period should have alerted him to his increased disability. The majority opinion clearly ignores the accepted requirements of estoppel as stated in *Pantle*. The claimant has not offered any proof which would support the principle of estoppel, and any finding by the Industrial Commission that Travelers was estopped from asserting the statute of limitations is contrary to the manifest weight of the evidence.

The final reason for this dissent concerns the effect of the opinion on the statute of limitations. It appears that once a misrepresentation has been made the statute becomes open ended. How long can a person sit idly by and rely upon a representation? Here, because a claim agent told claimant that he was only entitled to so much money the statute of limitations was not a bar to a claim filed 21 months later, with no showing why, under the facts of this case, it was reasonable to permit such a delay. Presumably, the same logic would permit a claim to be filed any number of months or years after the representation relied upon. Under the statute cited above, a claim must be filed within one year from the date of injury or the last payment of compensation. It would appear logical that some restriction related to the rule of reason should be placed upon the tolling of the limitation period because of estoppel.

For the reasons stated in this dissent, the decision of the Industrial Commission should be reversed.

MR. JUSTICE UNDERWOOD joins in this dissent.