(No. 50513.-

THE CITY OF CHICAGO, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Maria D. Pagan, Appel-
lee.)

*Opinion filed April 3, 1979.*

Van Duzer, Gershon, Jordan & Petersen, of Chicago (John B. Van Duzer and Horace W. Jordan, of counsel), for appellant.

Thomas G. Cronin, of Chicago (Carolyn C. Whittington, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

On December 23, 1970, the claimant, Maria D. Pagan, was injured in the course of her employment with the respondent, the city of Chicago. She filed an application for adjustment of claim on September 1, 1972. The

arbitrator awarded the claimant benefits for permanent and total disability. The award was affirmed by the Industrial Commission, and the circuit court of Cook County confirmed the decision of the Commission. This appeal followed.

On the date of the accident, section 6(c)(3) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.6(c)(3)) provided that a claim for compensation must be filed within one year after the date of the accident, or within one year after the date of the last payment of compensation where any has been paid. Effective July 1, 1975, section 6(c)(3) was amended to enlarge the limitation period from one year to three years. (1975 Ill. Laws 224, 238-39.) The hearing before the arbitrator commenced January 30, 1974, and although his decision was not rendered until August 22, 1975, it is not clear from the record that the claimant, either before the arbitrator or at the hearing on review, contended that the proceeding was controlled by the three-year period established by the amendment. Subsequent to the decisions below, this court filed its opinion in *Arnold Engineering, Inc. v. Industrial Com.* (1978), 72 Ill. 2d 161, which held that the amendment to section 6(c)(3) was not retroactive. The claimant's application here is thus governed, as she concedes, by the one-year limitation period in effect at the time of the accident.

The claimant contends, however, that on May 31, 1972, she received a check from the respondent which constituted a payment of compensation and that her claim was therefore timely filed. The claimant also contends that the respondent was in any event estopped to plead the limitation period because of statements allegedly made to her in 1971 by four employees of the respondent that the respondent would pay compensation. In his decision the arbitrator made a finding that the claimant had been paid a sum on account of her injury, but he made no reference to

the question of estoppel.

The claimant was employed by the Chicago Committee on Urban Opportunity, an agency of the respondent, as a community representative, a job which entailed house calls. On December 23, 1970, she was driven to an address in Chicago in a minibus owned by the respondent and driven by one of its employees. After the claimant had alighted and was proceeding around the rear of the car, the driver backed the car up, striking the claimant, knocking her to the ground, and allegedly causing an injury to her back.

Following the accident the claimant was taken to the South Chicago Community Hospital for emergency treatment. She was discharged about three hours later, and went home. She returned to her employment January 8, 1971. Between the accident and her return to work the claimant was absent for nine working days. She continued to work for the respondent, performing the same work as before her accident, until May 3, 1972, when she was admitted to Mercy Hospital, where an operation on her back was performed. The claimant stayed in the hospital two months, and did not return to work with the respondent after her discharge from the hospital. An expert witness for the respondent testified that the condition for which the operation on the claimant was performed was a congenital one and not related to her accident.

We turn first to the contention that the respondent made a payment of compensation to the claimant on May 31, 1972. The alleged payment was in the amount of $22.05 and was made by a check delivered to the claimant while she was in Mercy Hospital. An employee of the respondent familiar with the claimant's work records testified that the payment was for a day of vacation earned that month. The witness testified that under the respondent's regulations such payments were made without regard

to whether the recipient had received a compensable injury. There was no evidence that the claimant had been paid for the days of work she lost while she was hospitalized at Mercy, and she herself admitted on cross-examination that this check was not for workmen's compensation. The finding of the arbitrator on this point was clearly unsupported by the evidence and cannot stand. *International Harvester Co. v. Industrial Com.* (1951), 410 Ill. 543; *cf. Wise v. Industrial Com.* (1965), 32 Ill. 2d 375, 376-77.

The claimant's evidence with respect to her claim of estoppel consisted of four conversations with employees of the respondent during the period from January through July 1971. Each conversation was initiated by an inquiry on the part of the claimant. None of the employees referred to were called as witnesses by either side, nor was there any evidence offered as to what their duties may have been with respect to claims for compensation.

The first of these conversations, on January 9, was with Mrs. Miller, whom the claimant identified as "chief clerk" of the department where the claimant worked. The claimant testified that she told Mrs. Miller that she had been hurt and had gone to a hospital, and asked whether the respondent was going to pay the bill and to pay her for the time that she was off. Mrs. Miller said that the respondent would "take care." At Mrs. Miller's suggestion the claimant then called Mrs. Lyons, an employee understood by claimant to handle insurance matters, and had a similar conversation. A short time thereafter the claimant approached Mrs. Vanna, who had replaced Mrs. Miller, and, after complaining of pains in her back and leg, inquired again whether the respondent was going to pay her for the time she had lost and for the doctor and hospital bills, to which Mrs. Vanna said, "Yes, we'll take care." In July 1971, the claimant had a similar conversation with Mrs. Hickman, who had now replaced Mrs.

Vanna. Mrs. Hickman also stated that the respondent would "take care" of her. At Mrs. Hickman's suggestion the claimant spoke again to Mrs. Lyons. The conversation was testified to as follows:

"I called her and I told her that I was still hurt, my leg was almost dead, maybe I need an operation, what they going to do; and she said if you are under treatment we would take care, keep your doctor, go see him."

During the period when these conversations took place, as the claimant admitted on cross-examination, she was told that the respondent had paid the bill from South Chicago Community Hospital. No medical bills were submitted for payment to the respondent, and there was no evidence that the respondent had paid wages to the claimant for the time when she was absent from work, although she had been paid for two days of sick leave to which she had already become entitled under the terms of her employment.

The extent to which the claimant was being treated by a physician at this time is disputed. The claimant testified that she had been under the care of a Dr. Armando Abadin. Dr. Abadin had left the State, and did not testify. His office records relating to the claimant, which had been obtained by subpoena, did not show any treatment of her except for injuries sustained earlier in an automobile accident, not work-related, which took place August 22, 1970. In her testimony she testified that she had never been treated by Dr. Abadin for that accident.

A letter written for the claimant concerning her accident was sent to the newspaper column "Action Line" on May 24, 1972. It was introduced by the respondent as an admission against interest. The letter stated that the claimant had engaged a Chicago attorney to represent her in a possible suit against the respondent based on a claim that the driver of the city vehicle was inebriated at the time. The letter also stated, "I did not seek restitution for

injuries because I was afraid that such would cause CCUO-Model Cities to fire me." The letter did not mention the conversations with the respondent's employees to which the claimant had testified; nor did it refer to any belief by her that the respondent had agreed to pay compensation. The claimant admitted in her testimony that no one employed by the respondent had ever threatened to discharge her if she should file a compensation claim.

The question of what circumstances are sufficient to estop a respondent from pleading the limitations period prescribed by section 6(c)(3) of the Act is one which has been before this court several times in recent years.

In some cases an agent of the employer or of its insurance carrier made a misrepresentation regarding a fact which would be pertinent to a decision by the claimant as to whether or when he should file an application. *Pope v. Industrial Com.* (1973), 53 Ill. 2d 560, is illustrative. There the last payment of compensation had been made in January 1962. In April of that year the respondent mailed the claimant another check which was in payment for medical expenses, although neither the check nor the transmittal letter so showed. Under section 8(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)) such a payment is not the payment of compensation, and therefore does not extend the time in which to file an application. When the claimant's attorney asked the employer's insurance adjuster whether the April payment had been for compensation, he was told that it was. If that representation had been true, the claimant would have had until April, rather than January, in which to file her application, which was filed in March. The Commission found that the claimant's attorney had relied on the adjuster's false representation, and this court held that the employer was therefore estopped to assert the defense based on the statute of limitations.

A comparable situation was presented in *George Young & Sons, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 220. There the claimant had received compensation payments following his accident, which took place January 12, 1970, until his return to work on September 2 of that year. On January 29, 1971, a discussion took place between the claimant and a representative of the employer's insurance carrier in the course of which the latter offered to settle the claim for a specified amount, an offer which was accepted. The agent represented that the amount offered was the maximum to which the claimant would be entitled under the Act. That representation, the court found, was false. The employer was therefore held estopped to plead the limitation period when the claimant failed to file his application until November 1, 1972.

In the present case there was no testimony by the claimant, and there was no other evidence that the respondent made any misrepresentation of fact. The claimant does not assert that she was ignorant of the existence of a time limitation on the filing of claims, or that the respondent failed to advise her of such. An omission of the latter sort, under the decision in *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, would, of course, not in itself create an estoppel.

What the claimant relies on here are statements made to her by several of the respondent's employees, to whom she spoke at various times in 1971, that the respondent would "take care" of her. We note to begin with that, in view of the time when they were made, these representations might arguably be deemed to relate only to those payments for lost time and medical services which had already occurred, rather than other, future payments in connection with her hospitalization during 1972, an event which had not as yet taken place. In the absence of some misrepresentation of fact, a promise by a respondent to pay compensation does not ordinarily work an estoppel.

The limited circumstances under which such an estoppel can arise were considered in *Schumann v. Industrial Com.* (1975), 61 Ill. 2d 241, *Kaskaskia Constructors v. Industrial Com.* (1975), 61 Ill. 2d 532, and *Molex, Inc. v. Industrial Com.* (1975), 62 Ill. 2d 46. ·

In *Schumann* the accident to the claimant took place February 6, 1968, but his application was not filed until August 22, 1969. Following his accident he received medical treatment, and beginning some six months after the accident he had several conversations with his employer's insurance broker concerning hospital and medical bills. The broker advised him that bills already incurred would be paid by the insurer, and indeed all such bills submitted to the insurer within one year from the accident were paid.

In March 1969, however, the claimant was told that the insurer would no longer pay medical bills since the time in which to file an application had run. The conversations with the broker had related to medical bills, not to compensation, and since there was no evidence that the adjuster had sought to mislead the claimant on the distinction between the two, this court held that no defense of estoppel had been made out.

*Kaskaskia* also involved continuing discussions between the claimant and the insurance carrier. For the purpose of calculating the limitations period the base point was March 31, 1972, when the claimant received his last payment of compensation for the accident. The claimant's application was filed April 3, 1973.

In February 1973, the claimant advised the insurance carrier that he would require further surgery, which he had scheduled for April 10. At some point in March representatives of the insurer called on the claimant to discuss the matter. A written statement from him was taken, but it was not introduced in evidence. The claimant did testify, however, that the representatives had not advised him at

that meeting that the limitations period was about to run or that his claim would be disallowed. On March 29, the insurer wrote the claimant a letter, which was not received by him until April 2, 1973, asserting that the claimant's present complaint did not, in the carrier's opinion, result from the injury received on June 18, and that no further medical payments or compensation payments would be made.

The court upheld a decision by the Commission granting an award to the claimant. The rationale of the decision is presumably that the respondent's failure to send its letter of disclaimer until after the limitations period had run, coupled with the immediacy with which the claimant then filed his application, permitted an inference that the silence of the carrier's agents at the earlier meeting, if not a deliberate act of concealment, was at least designed to create a reasonable expectation on the part of the claimant of a further response in advance of the end of the limitations period.

*Molex,* too, involved prolonged discussions with the insurance carrier's adjuster following the accident, which took place February 13, 1971. The application with the Commission was filed October 4, 1972. After the claimant had furnished the adjuster with the report of a doctor by whom he had been examined, the adjuster, on January 5, 1972, offered to settle the claim for a stipulated amount. When the claimant rejected the offer, the adjuster suggested that an examination be made by a second doctor, since it was possible that the carrier might then make a better offer. Such an examination was had and the adjuster then advised the claimant that it was awaiting receipt of the report. It was not until March, after the limitation period had expired, that the adjuster informed the claimant that the second report had been negative and that no further offer would be made. In affirming a decision of the Commission granting an award, this court stated:

"When settlement negotiations are conducted as close to the expiration of the limitation period as they were in this case notice of the termination of negotiations should be given to the claimant a reasonable length of time before the expiration date so that he may have adequate time to prepare and file an application for adjustment of claim." 62 Ill. 2d 46, 51.

While *Kaskaskia* and *Molex* indicate that an estoppel may sometimes arise in the absence of an outright misrepresentation, the circumstances of those cases are distinctively different from those now before us. The conversations with different employees of the respondent to which claimant testified are not the equivalent of a course of negotiation with an insurer over a specific claim for compensation, and they took place at a time far in advance of December 22, 1971, the date when the limitation period was to expire. Before that date, moreover, since the respondent had not paid any compensation, it must have become apparent to the claimant that the respondent had no intention of doing so, notwithstanding any statements previously made to her.

This lack of payment by the respondent, the absence of any promises of payment made later than July 1971, and the failure of the claimant to conduct further inquiry all negate the thesis that the claimant's failure to file her application within the one-year period was due to reliance upon the respondent's representations. See *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 372.

Where the evidence permits more than one inference the propriety of the inference drawn is a matter of fact for the determination of the Commission, but where there is no evidence at all on which to base the inference the decision of the Commission becomes mere speculation and cannot stand. See *Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 85; *Kirkwood Brothers Construction v. Industrial*

*Com.* (1978), 72 Ill. 2d 454, 459.

A further reason for reversal is that the claimant did not file her application for adjustment of claim until September 1, 1972, well over a year following the date of her last conversation with an employee of the respondent. Section 6(c)(3) of the Act imposes a one-year limitation from the date of the accident, and when the period is extended by virtue of a payment of compensation, a limitation of one year from the last such payment is also established. To permit a longer period when the starting point of the limitation period has been deferred through estoppel would be anomalous. It would eliminate the element of reliance from the concept of estoppel, and it would potentially allow an application to be filed at any time in perpetuity.

We are of the opinion that when an estoppel is held to defeat the operation of the one-year limitation period imposed by section 6(c)(3) of the Act, the application for adjustment of claim must nevertheless be filed no later than one year from the occurrence of the conduct on which the estoppel is based. That is a position which has been adopted or favorably referred to by other courts. (See *Workmen's Compensation Appeal Board v. Griffith* (1977), 28 Pa. Commw. 623, 629-30, 368 A.2d 1371, 1374-75; *Tarnowski v. Kanarr Corp.* (1974), 12 Pa. Commw. 488, 491-92, 317 A.2d 904, 905-06; *Palmer v. City of Pittsburgh* (1973), 9 Pa. Commw. 526, 531-32, 308 A.2d 179, 182; *United States Steel Corp. v. Iwaskewycz* (1972), 7 Pa. Commw. 211, 215-16, 298 A.2d 62, 64; *Duncan v. Gaffney Mfg. Co.* (1949), 214 S.C. 502, 511, 53 S.E.2d 396, 399-400; Annot., 44 A.L.R.3d 760, 775 (1972).) It is also a position which is not inconsistent with prior decisions of this court (*cf. Schumann v. Industrial Com.* (1975), 61 Ill. 2d 241; *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 372), except for *George Young & Sons v. Industrial Com.* (1977), 66 Ill. 2d

220, where a contrary result was reached without discussion. We consider that that decision should not be followed in this regard.

In view of our disposition of this appeal we do not reach the question whether the Commission's finding of disability was contrary to the manifest weight of the evidence. The judgment of the circuit court of Cook County is accordingly reversed, and the cause is remanded to the Industrial Commission with directions to dismiss the claim.

*Reversed and remanded,*
*with directions.*