(No. 80498.

BRIAN TEGELER, Appellant, v. THE INDUSTRIAL COMMISSION (E.C. Baker & Sons, Inc., Appellee).

*Opinion filed October 18, 1996.*

McMORROW, J., dissenting.

Richard L. James, of Paris, for appellant.

Gregory C. Ray, of Craig & Craig, of Mattoon, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The claimant, Brian Tegeler, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)) alleging that he sustained injuries arising out of and in the course of his employment with E.C. Baker & Sons, Inc. The arbitrator found in favor of the claimant and awarded him compensation for temporary total disability and permanent partial disability. The Industrial Commission reversed the decision of the arbitrator, finding that the claimant's application for adjustment of claim was barred by the applicable statute of limitations. On administrative review, the circuit court of Effingham County confirmed the Industrial Commission's decision. The Industrial Commission division of the appellate court, with one justice dissenting, affirmed the circuit court. 276 Ill. App. 3d 1078. The appellate court certified the cause for further review, and the claimant filed a petition for leave to appeal (155 Ill. 2d R. 315(a)). We granted review and now reverse the judgment of the appellate court. We remand the cause to the Industrial Commission for further proceedings consistent with the views expressed in this opinion.

## FACTS

On July 29, 1987, Brian Tegeler, a 25-year-old well driller, was injured in a motor vehicle accident in the course of his employment with E.C. Baker & Sons, Inc. E.C. Baker & Sons, Inc. (the employer), is owned and operated by Brian's uncle. Brian's mother, Loretta Tegeler (Loretta), is the employer's corporate secretary and works in the company's office. Shortly after the accident happened, Loretta contacted the employer's in-

surance agent, R.D. Hughes, and reported the accident. Robert Scybert (Scybert), an independent claims adjuster for the employer's insurance carrier, handled the matter on behalf of the carrier. Sometime after the accident, Scybert contacted Loretta about scheduling an appointment to take Brian's statement about the accident. Scybert was in contact with Brian only once, when Scybert took Brian's statement. All other contacts were between Loretta and Scybert. Loretta acted on behalf of Brian and relayed any messages from Scybert to Brian. Brian was not represented by counsel during this time.

Brian was treated by Dr. Carl Belber, an orthopedic surgeon, for two years following the accident. Among other treatments, Dr. Belber surgically repaired a partial laceration of Brian's left ulnar nerve above his elbow, an injury caused by the accident. Brian was also treated by Dr. Gaylin Lack, an orthopedic surgeon, for three years after the accident. Dr. Lack determined that Brian suffered a right shoulder separation as a result of the accident. Brian saw Dr. Lack periodically from August 11, 1987, through December 3, 1990.

Around February of 1990, Scybert called Loretta and requested that Brian undergo a medical examination by Dr. Brown in connection with his claim. Brian complied. Subsequent to the examination, Scybert informed Loretta that he was waiting for Dr. Brown's report.

On May 23, 1990, Scybert relayed by telephone a settlement offer for Brian's injuries to Loretta. Scybert offered to settle Brian's workers' compensation claim for $7,346. Scybert explained that this amount represented compensation for Brian's permanent injuries to his left arm. Loretta responded by informing Scybert that there were permanent injuries to Brian's right shoulder as well. Scybert stated that it was his understanding that

Brian's right shoulder had no permanent injuries. Loretta disagreed. She then told Scybert that she would obtain Dr. Lack's report regarding the injuries to Brian's right shoulder. There were no further communications between Scybert and Loretta or Brian following the settlement offer.

On December 15, 1990, the day before Loretta received the report from Dr. Lack, Loretta was informed in a letter from the employer's insurer that the settlement offer had been withdrawn and the case closed. When Loretta spoke with Scybert after reading the letter, he informed her that, because the statute of limitations had expired, the case had been closed. Brian subsequently filed an application for adjustment of his claim with the Industrial Commission on January 4, 1991.

At the hearing before the arbitrator, Scybert was questioned about his conduct concerning the settlement offer he relayed to Loretta on May 23, 1990. Scybert testified that the employer's insurance company had instructed him to make the offer and await a response. The insurance company had further instructed Scybert that, if the statute of limitations should expire before the settlement offer was accepted, then the offer was to be withdrawn. Scybert indicated in his testimony that he knew the statute of limitations would expire two months and five days after he made the settlement offer to Loretta. Nonetheless, Scybert did not tell Loretta or Brian when the settlement offer would terminate. Nor did he inform Loretta or Brian that the statute of limitations would soon expire.

In addition, Loretta testified that no one ever provided Brian with a copy of the Industrial Commission's instruction handbook, which contains information regarding the rights and obligations of employers and employees under the Workers' Compensation Act. Lor-

etta specifically requested a copy of the handbook from the employer's insurance carrier immediately after the accident to give to Brian. Loretta also informed Scybert that Brian did not have a copy of the handbook.

After considering the testimony of Brian, Loretta, and Scybert, the evidence deposition of Dr. Lack and the office records of Dr. Belber, the arbitrator found in favor of Brian. The arbitrator found that the statute of limitations was "tolled." The arbitrator based her finding on Scybert's actions with Loretta and Scybert's failure to advise Brian of the expiration date of the statute of limitations. The arbitrator awarded Brian $157.94 per week for a period of 12 2/7 weeks for temporary total disability and $142.15 per week for a period of 132.5 weeks for permanent partial disability, as provided in section 8(e) of the Act (820 ILCS 305/8(e) (West 1992)). According to the arbitrator, the permanent partial disability award was based on Brian's 45% loss of use of his left arm and 20% loss of use of his right arm.

The employer submitted a petition for review of the arbitrator's decision to the Industrial Commission (Commission). Two members of a three-member panel reversed the arbitrator's decision and found in favor of the employer. The Commission determined that Brian's application for adjustment of claim was barred by the applicable statute of limitations (820 ILCS 305/6(d) (West 1992)). The Commission found that the employer was not estopped from asserting the statute of limitations as a defense because the employer did not mislead or lull Brian into failing to file his claim. The Commission also found that the employer had no obligation to advise Brian when the statute of limitations would expire on his claim.

A dissent was filed by one member of the Commission. The dissent focused on section 7110.60 of the Commission's rules, which requires employers to deliver a

copy of the Handbook on Workers' Compensation and Occupational Diseases to any employee who reports a work accident. 50 Ill. Adm. Code § 7110.60 (1991). According to the dissent, this rule is designed to insure that employees know their statutory rights and obligations, including the statute of limitations for filing a claim for workers' compensation. The dissent pointed out that the evidence showed that Brian did not receive a copy of the handbook and there was no evidence that he knew or should have known the statute of limitations was running. The dissent thus concluded that the claim was timely and the arbitrator's decision should be affirmed.

Brian sought review of the Commission's decision in the circuit court. The circuit court confirmed the Commission's decision, finding that it was not contrary to the manifest weight of the evidence.

The Industrial Commission division of the appellate court, with one justice dissenting, affirmed the judgment of the circuit court. The majority found that Brian failed to show that the employer should be estopped from raising the statute of limitations as a defense. 276 Ill. App. 3d 1078. On the other hand, the dissenting opinion agreed with the conclusion of the dissenting commissioner. 276 Ill. App. 3d at 1084 (Rarick, J., dissenting).

## ANALYSIS

The issue before this court is whether estoppel prevents the employer from raising the statute of limitations as a defense.

The statute of limitations for filing an application for adjustment of claim under the Act is set forth in section 6(d) (820 ILCS 305/6(d) (West 1992)). There is no dispute in this case that the applicable statute of limitations expired three years after the date of the claimant's accident. See 820 ILCS 305/6(d) (West 1992). The claimant was injured on July 29, 1987. The claimant, however,

did not file his claim until January 4, 1991, a few months after the expiration of the three-year limitations period. The claimant argued before the Commission that the employer was estopped from asserting the expiration of the limitations period as a defense. The Commission rejected the claimant's argument. The claimant now advances two arguments in support of his position that the employer is estopped from raising the statute of limitations as a defense. We address the two arguments separately.

First, the claimant maintains that an employer has a duty to advise a claimant of the statute of limitations under the Act. According to the claimant, an employer that fails to so advise is estopped from raising the statute of limitations as a defense. We disagree. This court has held that an employer's failure to advise a claimant of the statute of limitations for filing a workers' compensation claim does not, in and of itself, create an estoppel. *City of Chicago v. Industrial Comm'n*, 75 Ill. 2d 270 (1979); *Pantle v. Industrial Comm'n*, 61 Ill. 2d 365 (1975). We adhere to this court's prior holdings and reject the claimant's argument. We therefore agree with the Commission's finding that the employer in this case had no duty to advise the claimant when the applicable limitations period would expire.

The claimant next argues that the employer is estopped from asserting the statute of limitations as a defense because of the conduct and statements of the claims adjuster during the course of settlement negotiations. We agree.

Estoppel is an equitable doctrine that is invoked to effectuate justice by precluding a party from benefiting from its own wrongdoing. See 18 Ill. L. & Prac. *Estoppel* ch. 2, § 22 (1956); *Byron Community Unit School District No. 226 v. Dunham-Bush, Inc.*, 215 Ill. App. 3d 343, 348 (1991). The law is clear that an employer in some cir-

cumstances may be estopped from asserting the statute of limitations as a defense. *George Young & Sons, Inc. v. Industrial Comm'n*, 66 Ill. 2d 220 (1977); *Molex, Inc. v. Industrial Comm'n*, 62 Ill. 2d 46 (1975); *Kaskaskia Constructors v. Industrial Comm'n*, 61 Ill. 2d 532 (1975); *Pope v. Industrial Comm'n*, 53 Ill. 2d 560 (1973). Estoppel applies when the conduct or statements of an employer or its representatives lull the employee into a false sense of security, thereby causing the employee to delay the assertion of his or her rights. See *George Young & Sons, Inc.*, 66 Ill. 2d at 225; *Molex, Inc.*, 62 Ill. 2d at 50; *Kaskaskia Constructors*, 61 Ill. 2d at 535; *Pope*, 53 Ill. 2d at 565; *Dickirson v. Pacific Mutual Life Insurance Co.*, 319 Ill. 311, 318 (1925).

A clear example of how estoppel applies appears in *Molex, Inc. v. Industrial Comm'n*, 62 Ill. 2d 46 (1975). In *Molex*, an employee suffered an injury during the course of his employment. A representative of the employer's insurance company required the employee to be examined by a particular doctor. The employee underwent the examination and the doctor forwarded his findings to the insurance company. The insurer's representative then informed the employee by telephone of the doctor's report and offered a settlement. This settlement offer was made a little over one month prior to the expiration of the statute of limitations. When the employee "resisted" the offer, the representative recommended another examination by the insurer's doctor, suggesting that such an examination could lead to a better offer. The employee agreed, and the insurance representative indicated that she would make the appointment and call him back. Despite several telephone calls and letters on the part of the employee over the course of two months, the insurer's representative never responded. When the employee spoke with another representative at the insurance company, he was informed that the

statute of limitations had run. Consequently, the claimant was unable to file his application for adjustment of claim until after the expiration of the statute of limitations. *Molex*, 62 Ill. 2d at 49.

In *Molex*, this court found that the insurance representative's discussion of settlement with the employee induced the employee to reasonably believe that there would be a further settlement offer after another examination by the insurance company's doctor. *Molex*, 62 Ill. 2d at 50. The record showed that the employee was waiting for further instructions from the insurance representative regarding an appointment with the insurance company's doctor. It was not until after the expiration of the statute of limitations, however, that the employee was informed that no further offer would be made. *Molex*, 62 Ill. 2d at 50. As a result of reasonably relying on the conduct of the insurance representative, the employee did not file his claim for compensation until after the expiration of the statute of limitations. This court, therefore, held that the employer was estopped from asserting the statute of limitations as a defense to the late filing of the claim. *Molex*, 62 Ill. 2d at 50. In reaching this conclusion, this court reasoned that, when settlement negotiations are conducted close to the expiration of the statute of limitations, notice of a termination of the negotiations should be given to the claimant a reasonable length of time before the expiration of the limitations period. *Molex*, 62 Ill. 2d at 51. Such notice gives the claimant adequate time to prepare and file an application for adjustment of claim. *Molex*, 62 Ill. 2d at 51. As this court stated:

> "Whether or not the result is intended, it is manifestly unfair for an employer or its insurance carrier, being versed in the operations of the Workmen's Compensation Act, to lead the employee to the very brink of the expiration date and then precipitously abandon him too late for him to preserve his claim." *Molex*, 62 Ill. 2d at 51.

In the case *sub judice*, the arbitrator estopped the employer from asserting the statute of limitations as a defense. The arbitrator based her finding in part on Scybert's actions with Loretta, who acted on behalf of the claimant, during settlement negotiations. The Commission reversed the arbitrator's finding and refused to apply estoppel. The Commission found that the employer through its insurer's claims adjuster did not mislead the claimant into delaying the filing of his claim. We find that the Commission's decision is inconsistent with *Molex* and is against the manifest weight of the evidence.

Here, as in *Molex*, the employer's representative lulled the claimant into a false sense of security, thereby causing the claimant to delay the assertion of his rights under the Act. The record in the present case reveals that Scybert was the representative of the employer's insurance company. Loretta was acting on behalf of her son, the claimant. On May 23, 1990, Scybert called Loretta and offered a settlement of $7,346, as compensation for the claimant's permanent injuries to his left arm. Loretta did not reject the offer, but simply inquired as to why it did not include compensation for the claimant's injury to his right shoulder. Scybert disputed the permanency of that injury. However, when Loretta indicated that she would get a report from Dr. Lack regarding that injury, Scybert acquiesced. His acquiescence suggested that the settlement offer was open to negotiation on this point. Consequently, Loretta was clearly left with the reasonable belief that the insurer was holding the $7,346 settlement offer open and that settlement negotiations would continue regarding the right shoulder subsequent to Loretta's receipt of Dr. Lack's report. In fact, after the settlement discussions on May 23, 1990, there were no further communications between Scybert and Loretta until December 15, 1990, when Loretta was

informed that the settlement offer was withdrawn because the limitations period had expired.

Moreover, Scybert admitted in his testimony before the arbitrator that the employer's insurance company had instructed him to make the settlement offer and await a response. Scybert was also instructed that if the statute of limitations ran before the settlement offer was accepted, then the settlement offer was to be withdrawn. Scybert knew the limitations period would expire two months and five days after he made the settlement offer. Nevertheless, Scybert did not inform Loretta or the claimant that the settlement offer would soon be withdrawn.

All these facts show that Scybert misled Loretta into believing that the settlement offer remained open and that settlement negotiations would continue regarding the right shoulder at least until Loretta's receipt of Dr. Lack's report. Scybert knew when he commenced settlement negotiations that the settlement offer and negotiations would terminate two months and five days later when the statute of limitations expired (*i.e.*, July 29, 1990). Scybert, however, did not inform Loretta or the claimant of this fact. Scybert thereby misrepresented the facts regarding an existing time limitation on the settlement offer, which lulled the claimant into a false sense of security that both the settlement offer and settlement negotiations remained open. The claimant reasonably relied to his detriment on this false sense of security created by Scybert by delaying filing an application for adjustment of claim until after he was informed that the settlement offer had been withdrawn. See *Kaskaskia Constructors*, 61 Ill. 2d at 535 (the claimant relied on the conduct of the employer's insurance company's representative because the claimant withheld filing his claim until receipt of the letter denying liability). The facts further show that Scybert entered

into settlement negotiations close to the expiration of the statute of limitations and failed to give the claimant notice of a termination of the negotiations a reasonable length of time before the expiration of the limitations period. As this court found in *Molex*, it would be unfair to permit the employer's representative to conduct settlement negotiations close to the expiration of the statute of limitations and then abandon the claimant too late for him to preserve his claim. *Molex*, 62 Ill. 2d at 51. We therefore hold that the employer is estopped from raising the statute of limitations as a defense.

Because of our holding, we need not address the claimant's other argument that the employer's failure to provide him with a copy of the Commission's handbook pursuant to section 7110.60 of the Commission's regulations (50 Ill. Adm. Code § 7110.60 (1991)) also served as a basis for estoppel.

## CONCLUSION

For the reasons stated, we reverse the judgments of the appellate and circuit courts and set aside the decision of the Industrial Commission. We remand the cause to the Industrial Commission for further proceedings consistent with the views expressed in this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*Commission decision set aside;*
*cause remanded.*

JUSTICE McMORROW, dissenting:

The majority today determines that the insurance adjuster in the case at bar "misrepresented the facts regarding an existing time limitation on the settlement offer" (173 Ill. 2d at 509-10) and, therefore, that the employer is estopped from asserting the statute of limitations as a defense. This holding is contrary to the express findings of the Industrial Commission that the

claimant was not misled during the settlement negotiations. There is nothing in the record which indicates that the Industrial Commission's findings are against the manifest weight of the evidence, as they must be, for this court to overrule them. Moreover, by holding that the employer is estopped from asserting the statute of limitations as a defense under the facts of this case, I believe the majority has effected a fundamental and unwarranted change in the area of workers' compensation law. Accordingly, I dissent.

The claimant, Brian Tegeler, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)), for injuries which occurred during the course of his employment with E.C. Baker & Sons, Inc. It is undisputed that the application was filed after the statute of limitations had run. Claimant's mother, Loretta Tegeler (Loretta), works in the office of E.C. Baker & Sons, Inc., and handled discussions for her son with the workers' compensation insurer, which was represented by Robert Scybert (Scybert), an independent insurance adjuster.

During a brief hearing held before an arbitrator, Loretta testified on direct examination that sometime "in June or first of July," 1990, she had a telephone conversation with Scybert, during which he made a settlement offer for claimant's injuries on behalf of the insurer of approximately $7,346. Loretta gave the following testimony describing the phone call:

"A. He [Scybert] said he wanted to make Brian an offer on the permanent injuries to his left arm, and that's when he gave me the figure.

Q. And what did you advise Mr. Scybert?

A. I told him that Brian had other injuries; what about his shoulder?

Q. Which shoulder was this?

A. This is the right shoulder.

Q. What did Mr. Scybert say?

A. He said that the right shoulder apparently had gone back together and that it wasn't injured. And I said, oh, but it was.

Q. What next [*sic*] did you do then?

A. I said he could call Dr. Lack [one of claimant's physicians] and get the doctor's report [regarding the injury to claimant's right shoulder] and I would also contact him and get a letter from him.

Q. Did you contact Dr. Lack?

A. Yes, we did.

Q. What was the purpose of contacting Dr. Lack?

A. To get a letter on a statement of the injury to the right shoulder."

Loretta also testified that Scybert did not make the settlement offer in writing and that he did not advise her of the date the statute of limitations would expire. Loretta repeated the description of the telephone conversation given above during cross-examination. This was the totality of Loretta's testimony on this issue.

Scybert testified before the arbitrator that on May 23, 1990, he had a telephone conversation with Loretta, at which time an offer was made to her son, through her, for permanent partial disability. Scybert testified to the conversation as follows:

"A. I simply made the telephone call. I made the offer—and I'd have to look up the amount of the offer at this time if that's necessary, but I did make the offer, and it was indicated to me that they would get back to me in reference to their decision to settle—or to finalize the claim.

Q. Do you have a recollection whether the subject of a claimed injury to Brian's right shoulder was raised, either by you or by Loretta during that conversation?

A. Not during that conversation.

Q. Did that subject come up at any other time in your discussions with Mrs. Tegeler?

A. I believe I saw in the file back in 1989 she had ask [*sic*] Dr. Lack for a doctor's report in reference to the shoulder. I had just received Dr. Lack's notes at that time indicating that the shoulder was fine. I have a copy of

that in the file. And this was relayed to Mrs. Tegeler; however, she still chose to have the doctor provide her with a separate report. If that was ever received by them, I do not know.

\* \* \*

Q. Okay. Can you—you may look at your file if you need to refresh your memory—identify when you discussed the question of the right shoulder injury and whether there was or was not permanency with Mrs. Tegeler?

A. Just give me a quick second. I can do that, I think.

Q. Sure.

A. \*\*\* This is in reference—our December 30, 1988, report just after receiving Dr. Lack's report. Apparently I had a conversation with Mrs. Tegeler about that report and then I made a reference in the file here, noting that she did have some concern about the—not necessarily about the shoulder but wasn't as optimistic as the doctor had been in reference to his report—because I think you still had a concern at that point—and that's when she advised me that she would be writing to Dr. Lack for his report in reference to the shoulder.

Q. And that, sir, to the best of your recollection was on or near December 30, 1988; would that be accurate?

A. It would most likely be on that date or just previous to that date."

Scybert also testified that he did not advise claimant or his mother of the date the statute of limitations would expire. According to Scybert, the insurance company instructed him to make the settlement offer and await a response from claimant. If the response came after the statute had run, which would have been two months and five days after the May 23, 1990, phone call, then Scybert was to advise claimant that the offer was withdrawn. This was the full extent of Scybert's testimony concerning the phone conversation he had with Loretta, and whether the injury to claimant's right shoulder was discussed during that conversation.

Based on the foregoing testimony, which is the only

evidence of record regarding the phone conversation which took place between Scybert and Loretta, the Industrial Commission (the Commission) reached the following conclusions:

"The Commission notes that no provision of the [Workers' Compensation] Act nor any case in Illinois suggests that there is an affirmative duty by an adversarial party to advise a claimant when the statute of limitations runs on the claimant's cause of action. The creation of such a duty under the Act is the province of the legislature. *The facts of this case do not indicate that Respondent did anything to mislead Petitioner so as to estop Respondent from asserting a defense under the statute. The Arbitrator made no findings that Respondent was guilty of misleading or lulling Petitioner into failing to file. The Commission finds the testimony of Robert Scybert to be credible that Respondent did not mislead Petitioner into believing that any further action on its part would occur.* The Commission finds that Respondent had no obligation to advise Petitioner that his claim under the Act would expire.

Based on the above, the Commission finds that Petitioner's claim was not timely filed and that therefore the Commission does not have jurisdiction over Petitioner's claim." (Emphasis added.)

The scope of our review of the Commission's findings is quite narrow. "It is the Commission's role to judge the credibility of the witnesses, determine the weight of their testimony, and draw appropriate inferences from the evidence. [Citations.]" *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 396 (1995). We may not reweigh the evidence, or "substitute our judgment for that of the Commission merely because we might have drawn different inferences from the same record. [Citations.]" *Parro*, 167 Ill. 2d at 396. Our review is strictly limited to determining whether the findings of the Industrial Commission are against the manifest weight of the evidence. *Parro*, 167 Ill. 2d at 396. Under this standard, we may reverse the findings of the Commission only if we determine that no rational trier of fact could have reached the

conclusions reached by the Commission. *Chief Judge v. American Federation of State, County & Municipal Employees, Council 31,* 153 Ill. 2d 508, 514 (1992).

I submit that there is nothing in the record which indicates that the Commission's findings are against the manifest weight of the evidence, nor anything which would indicate, as the majority asserts, that Scybert "misrepresented the facts regarding an existing time limitation on the settlement offer" (173 Ill. 2d at 509). The clear import of Scybert's testimony is that the injury to claimant's right shoulder was not discussed during the May 23, 1990, phone conversation. The Commission determined that Scybert's testimony was credible.[1] There is no basis for this court to reject that determination and I note that the majority has offered none. For the purposes of this appeal, we must accept that on May 23, 1990, Scybert made a settlement offer to Loretta, to which she responded by saying that she would get back to him with her son's decision to accept or reject the offer. Because an employer has no duty to advise a claimant when the statute of limitations will expire (*City of Chicago v. Industrial Comm'n,* 75 Ill. 2d 270 (1979); *Pantle v. Industrial Comm'n,* 61 Ill. 2d 365 (1975)), under these facts, the employer should not be

---

[1]Although the determination of the credibility of witnesses lies solely with the Commission (see *Parro,* 167 Ill. 2d at 396; *Boatman v. Industrial Comm'n,* 256 Ill. App. 3d 1070, 1071 (1993)), it is worth noting that the arbitrator in the instant case made no findings with respect to the credibility of either Loretta's or Scybert's testimony. The arbitrator only decided that the employer should be estopped after hearing Scybert's testimony that the insurance company instructed him to make the settlement offer and await a response from Loretta without informing her of the statute of limitations. As noted in the text, an employer has no affirmative duty to inform a claimant of the statute of limitations. Thus, the arbitrator's decision was erroneous.

estopped from asserting the statute of limitations as a defense.

Furthermore, even if Scybert's testimony concerning the May 23, 1990, phone conversation were rejected in its entirety, there is no basis for estopping the employer. Loretta never testified that Scybert promised to contact Dr. Lack. Nor did she testify that Scybert promised to hold the settlement offer open until she received additional information from Dr. Lack. Thus, on the dispositive issue in this case, *i.e.*, whether there was any statement or misrepresentation on the part of Scybert which lulled claimant into a false sense of security regarding the time limit for filing his claim, there is no conflict in the testimony. Indeed, none of the members of the reviewing bodies below—the arbitrator, the Commission majority, the dissenting commissioner, the circuit court, the appellate court majority, and the dissenting appellate court justice—found that Scybert "misrepresented the facts regarding an existing time limitation" so as to mislead the claimant into failing to timely file his claim. It is only this court, without support in the record, that makes such a finding. There is simply no evidence that Scybert made any misrepresentations to claimant or his mother, nor any evidence that claimant or his mother detrimentally relied upon anything said by Scybert. Without these factors, the employer cannot be estopped from asserting the statute of limitations as a defense. See, *e.g.*, *Schumann v. Industrial Comm'n*, 61 Ill. 2d 241, 247 (1975).

Despite the foregoing, the majority nevertheless concludes that the Commission's findings are against the manifest weight of the evidence. Relying solely on Loretta's testimony, the majority reasons that Scybert's "acquiescence" to claimant's request for further medical information regarding his injuries is sufficient to estop the employer from asserting the statute of limitations

as a defense. 173 Ill. 2d at 508. However, even if Loretta's testimony is accepted to the exclusion of Scybert's, the majority's reasoning remains unsound.

As noted above, Loretta never testified to any misleading or lulling statements made by Scybert during their phone conversation. Therefore, in the context of this record, "acquiescence" can only mean a failure to inform claimant of the limitations period, *i.e.*, silence. To support its holding, the majority must necessarily make the inference that Scybert's mere silence in response to Loretta's statement that she would be obtaining further medical information regarding claimant's injuries "suggested that the settlement offer was open to negotiation on this point." 173 Ill. 2d at 508. This inference is squarely at odds with the Commission's finding that Scybert "did not mislead [Loretta] into believing that any further action on [his] part would occur." " '[I]t is axiomatic that this court will not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn ***. [Citations.]' " *Parro*, 167 Ill. 2d at 396, quoting *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 341 (1983); see also *Pantle*, 61 Ill. 2d at 369 (and cases cited therein). The Commission could reasonably infer that Scybert's silence did not mislead Loretta into believing that further action would be taken on his part. Accordingly, there is no reason why this court should reject the findings of the Commission that Scybert did not mislead Loretta during the settlement negotiations.

A further and more fundamental problem with the majority's reasoning regarding Scybert's "acquiescence" is that it cannot be reconciled with this court's prior decisions on the issue of estoppel. This court has never held that an employer may be estopped from asserting the statute of limitations as a defense where the conduct of the *claimant* instigated the delay in filing the claim.

To the contrary, this court has consistently held that to prevail on a theory of estoppel, a claimant must prove that "some acts or representation" (*Pantle*, 61 Ill. 2d at 371) of the employer or its representative created the delay in filing the claim. See, *e.g.*, *George Young & Sons, Inc. v. Industrial Comm'n*, 66 Ill. 2d 220 (1977); *Kaskaskia Constructors v. Industrial Comm'n*, 61 Ill. 2d 532 (1975). In the case at bar, Loretta decided to obtain further medical information regarding claimant's shoulder and chose to delay making a decision regarding the settlement offer pending receipt of that information. According to her own testimony, Loretta instigated the delay in filing the instant claim, not Scybert.

*Molex, Inc. v. Industrial Comm'n*, 62 Ill. 2d 46 (1975), the principal authority upon which the majority relies, is not to the contrary. In *Molex*, a settlement offer was made to the claimant and was rejected. The insurer's representative suggested that a better offer might be forthcoming if the claimant were to see the company doctor. The claimant agreed, and the representative stated that she would schedule an appointment with the doctor and call him back. The representative never called back, despite repeated telephone calls and letters from the claimant. In the meantime, the statute of limitations expired. *Molex*, 62 Ill. 2d at 49. This court determined that under the circumstances, the employer was estopped from asserting the statute of limitations as a defense. *Molex*, 62 Ill. 2d at 50. The majority's reliance on *Molex* is misplaced because in that case, the employer's representative took affirmative action—scheduling an appointment with the company doctor—which lulled the employee into a false sense of security and caused the claimant to delay filing the claim. Consistent with other decisions of this court, it was the employer in *Molex* who created the delay, not, as here, the employee.

By failing to follow the underlying rationale of *Molex*, I believe the majority has significantly and inappropriately altered the principles of estoppel in the area of workers' compensation law. The only conduct which Scybert engaged in here was to make an offer for a final settlement approximately two months before the statute of limitations was to run. Then, at most, he remained silent in the face of Loretta's statement that she was postponing her decision on whether to accept the offer pending receipt of further medical information. If that action alone is enough to estop the employer in the instant case from asserting the statute of limitations as a defense, then there is no principled way to conclude that other employers who make settlement offers and are told that a response to those offers will be forthcoming may not also be estopped. Despite the majority's assertions to the contrary (173 Ill. 2d at 505), an affirmative duty to advise the adversarial party of the statute of limitations has been imposed upon employers. The duty imposed by the holding of the majority today has far-reaching implications. Clearly, the imposition of such a duty is within the purview of the legislature and not this court.

Finally, I note that in Justice Rarick's dissent from the appellate court opinion below, the sole issue discussed was whether an employer's failure to provide a copy of the Handbook on Workers' Compensation and Occupational Disease to an employee who reports a work accident (see 50 Ill. Adm. Code § 7110.60 (1991)) will prevent the employer from asserting the statute of limitations as a defense. See 276 Ill. App. 3d 1078, 1084 (Rarick, J., dissenting). Justice Rarick certified this issue to this court. See 155 Ill. 2d R. 315(a). Unlike the majority, I believe this court should have addressed this important policy question. If, as the employer has argued, it proved to be inappropriate to address this is-

sue because the handbook was never put in evidence by the claimant and is not part of the record before us, then that fact should be acknowledged and the case dealt with accordingly.

For the foregoing reasons, I respectfully dissent.