(No. 78332.— )

ROSEMARY PARRO, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Verro's Restaurant,
Appellee).

*Opinion filed October 19, 1995.*

Ambrose & Cushing, P.C., of Chicago (Katherine A. Ward and Marilyn Martin, of counsel), for appellant.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Louis J. Cohn, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

The claimant in this workers' compensation case, Rosemary Parro, filed an application for adjustment of claim seeking compensation for injuries she sustained when she fell down a flight of stairs on the premises of her employer, Verro's Restaurant. The arbitrator denied compensation, as did the Industrial Commission, concluding that intoxication was the sole cause of the accident. On judicial review, the circuit court of Cook County confirmed the decision of the Commission. The appellate court, Industrial Commission division, affirmed the judgment of the circuit court. (260 Ill. App. 3d 551.) The appellate court later issued a certificate of importance pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316). We now affirm the judgment of the appellate court.

The accident involved here occurred on May 15, 1990, when the claimant, 50 years old at the time, fell down a flight of stairs at the restaurant where she was employed as a bartender. The claimant was severely injured as a result of the fall and remained in the hospital for nearly a month. Before the arbitrator, the claimant testified regarding her employment at Verro's Restaurant, in Chicago, where she had worked as a bartender for four years, and described the circumstances

of her accident on May 15, 1990. The claimant said that she did not drink any alcohol that day until around 7 or 7:30 in the evening, when she and some others celebrated a customer's announcement that he was becoming a father. According to the claimant, she poured herself a bottle of beer, but she drank only two sips of it.

After the restaurant closed and the claimant completed her duties, she changed into pumps having $1^1/_2$-inch heels and put on her raincoat. The claimant then decided to use the restroom, which was located down a flight of stairs in the basement. The claimant explained that, as she began to descend the stairs, her right heel became caught in the hem of her coat and she tripped and fell. The claimant stated that she would use that flight of stairs, which also led to the kitchen and a storage area, perhaps a dozen times a day. In addition, the claimant said that the steps were greasy and slippery and that the stairwell was poorly lighted. In her testimony, the claimant could not recall with certainty the occasion when she had last consumed alcohol prior to her fall on May 15, but she believed it occurred before that month.

In the proceeding before the arbitrator, the claimant also presented the evidence depositions of four persons who were customers of the restaurant on the evening of the claimant's fall. Duane St. Pierre, a lawyer, stated in his deposition that he arrived at the restaurant shortly after 5 p.m. He estimated that the accident occurred about two hours or two hours and 15 minutes after his arrival. St. Pierre stayed at the restaurant until an ambulance arrived, which, according to St. Pierre, occurred around 7:10 or 7:20.

St. Pierre stated that he did not see the claimant consume anything alcoholic until the bar closed, when another customer, George Dykes, poured some beer for

the claimant into a small glass for a toast to Dykes' recent wedding. According to St. Pierre, the claimant drank only a sip of the beer. After Dykes left, the claimant changed her shoes and said she was going to use the bathroom downstairs. St. Pierre then heard two loud noises, and he found the claimant lying at the foot of the stairs.

St. Pierre did not believe that the claimant was intoxicated at the time of the fall. When St. Pierre knelt by the claimant after she fell, he did not smell alcohol on her breath. According to St. Pierre, the claimant was able to perform her job duties on the night of the accident and did not appear to be intoxicated. He had known the claimant since she began working at the restaurant, and he was not aware that she had a drinking problem.

The claimant also presented the deposition testimony of George Dykes, a lawyer. Dykes said that he arrived at the restaurant around 5:10 on the evening of May 15, 1990, and left around 8 o'clock, before the claimant's accident occurred. According to Dykes, the claimant did not drink anything alcoholic until the end of the evening, when she consumed less than a bottle of beer. At that time, she and St. Pierre were toasting Dykes' recent wedding. According to Dykes, the claimant did not experience any difficulty in performing her work duties that evening and did not appear to be intoxicated. Dykes described the stairway where the claimant fell as "pretty treacherous" and said that it was long, steep, and dimly lighted.

Terry McLeran, who worked as a receptionist, testified that she was at the restaurant during the evening of May 15, 1990, for about an hour to an hour and a half, leaving around 7 o'clock that evening. McLeran stated that the claimant was able to perform her regular job duties and did not appear to be intoxicated.

McLeran also stated that she did not see the claimant consume any alcohol. McLeran said that she hugged Parro before leaving and that she did not smell any alcohol on Parro's breath or notice that her eyes were bloodshot.

Albert Green, a judge of the circuit court of Cook County, also testified in the claimant's behalf through an evidence deposition. Judge Green stated that he customarily stopped by Verro's Restaurant several times a week after work. He would generally arrive around 6 or 6:15 and would stay about 30 minutes, visiting with the claimant and with other friends who might be there. Judge Green stated that he did not see the claimant drink anything alcoholic on the evening of the accident and that the claimant did not have any difficulty performing her job duties and did not appear to be intoxicated.

The employer presented testimony and other evidence in support of its defense that the claimant was intoxicated at the time of her accident and that the fall was caused by her intoxication. The employer introduced into evidence the records of the claimant's hospitalization and treatment following her accident. In addition, the employer presented the evidence deposition of Dr. James S. Wolf, a surgeon, who treated the claimant at Northwestern Memorial Hospital after her fall. Dr. Wolf stated that, according to the emergency room report, the claimant arrived at the hospital at 9:12 p.m. on May 15. The claimant was described in the records as an "intoxicated white female." A blood sample was taken from the claimant at 9:20 that evening, and a test revealed that her blood-alcohol level was 0.288. According to Dr. Wolf, a blood-alcohol level of that amount would result in motor and cerebral impairment. Dr. Wolf concluded from the blood results and the description of the claimant in the emergency room records that the

claimant was intoxicated when she arrived at the hospital. Dr. Wolf also explained that the claimant, during her stay in the hospital, was suffering from pancreatitis as a result of her drinking. The hospital records showed that the claimant later told another doctor that she had been drinking heavily the week before her accident, contradicting her testimony before the arbitrator.

The claimant's employer also presented the deposition testimony of Dr. Scott A. Kale as an expert witness. Dr. Kale did not treat the claimant, but he did review her medical records. From his examination of the pertinent records, Dr. Kale concluded that the claimant's blood-alcohol level at the time of her admission to the hospital was 0.288. Dr. Kale stated that a person with that amount of alcohol in her bloodstream would be lethargic, inattentive, and clumsy, and her speech would be slurred. According to Dr. Kale, such a person would also have difficulty walking up and down stairs.

Dr. Kale also estimated the amount of alcohol the claimant might have consumed prior to her accident. Using the claimant's weight and blood-alcohol level at the hospital, and assuming that the accident occurred about two hours before the blood sample was drawn, Dr. Kale calculated that the claimant would have consumed the equivalent of five shots of whiskey. According to Dr. Kale, the claimant's blood-alcohol concentration could have reached 0.408, which Dr. Kale said was a potentially lethal level. Dr. Kale concluded that intoxication alone could have caused the claimant to fall.

Before the arbitrator, the parties stipulated that the employer did not permit or authorize employees to consume alcohol while working, that the stairway where the claimant fell was used by the public to obtain access to the restrooms in the restaurant, and that the stairs have never been modified by the employer. The parties

further stipulated that the staircase consists of 19 steps, each measuring 36 inches in width, with treads of 11 inches; a handrail is on the left side as one descends the staircase, and there is a light in the ceiling halfway down.

The arbitrator concluded that the claimant's injuries were not compensable under the Workers' Compensation Act. The arbitrator accepted the medical testimony introduced by the employer, which showed that the claimant's blood-alcohol level was 0.288 at the time of her admission to the hospital and could have been as high as 0.408 before the accident occurred. The arbitrator accordingly dismissed as "incredible" the claimant's assertion that she drank only several sips of beer before the accident. Having found the claimant's testimony concerning her consumption of alcohol to lack credibility, the arbitrator rejected the remainder of the claimant's testimony as well, including her assertion that she tripped and fell when her heel became caught in the hem of her coat. The arbitrator concluded that intoxication was the sole cause of the claimant's accident and thus determined that the accident did not arise out of and in the course of the claimant's employment.

The Commission, in a brief order, affirmed the arbitrator's decision. On judicial review, the circuit court of Cook County confirmed the decision of the Commission. A divided panel of the appellate court, Industrial Commission division, affirmed the judgment of the circuit court. (260 Ill. App. 3d 551.) A majority of the panel concluded that the claimant's injuries resulted from her intoxication. The two dissenting justices did not believe that one could conclude that, as a matter of law, the claimant was so intoxicated that she could no longer follow her employment. The appeal is before us by way of a certificate of importance issued by the ap-

pellate court pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316).

To be compensable under the Workers' Compensation Act, the injury complained of must be one "arising out of and in the course of the employment." (Ill. Rev. Stat. 1991, ch. 48, par. 138.2.) The claimant has the burden of establishing both requirements. (*Castaneda v. Industrial Comm'n* (1983), 97 Ill. 2d 338, 341.) An injury " 'arises out of' one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury." (*Jewel Cos. v. Industrial Comm'n* (1974), 57 Ill. 2d 38, 40.) "An injury is received in the course of employment where it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto. [Citations.]" (*Scheffler Greenhouses, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 361, 367.) The occurrence of an accident at the claimant's workplace does not automatically establish that the injury arose out of the person's employment. *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 62; *Castaneda v. Industrial Comm'n* (1983), 97 Ill. 2d 338, 341-42.

An injured employee's intoxication will bar recovery under the Act if the intoxication is the sole cause of the accident or is so excessive that it constitutes a departure from employment. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 481; see *Lock 26 Constructors v. Industrial Comm'n* (1993), 243 Ill. App. 3d 882, 887.) Intoxication that does not prevent the employee from following his occupation and that is only a contributing cause of the injury will not bar recovery. (*District 141 v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 558; see *Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62, 65.)

"Although it is said that the ultimate conclusion must appear as a matter of law for the intoxication defense to succeed (see *District 141*, 79 Ill. 2d at 557 (' "the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment" ')), such a decision will depend on a variety of factual predicates ***." *Paganelis*, 132 Ill. 2d at 484.

The claimant argues that the arbitrator, the Commission, and the courts below erred in concluding that her accident resulted solely from intoxication. The claimant disputes the accuracy of the evidence of her blood-alcohol level, observing that the record does not contain a printout from the machine on which the test was conducted, and she also contends that the machine itself may have malfunctioned. In addition, the claimant notes that the witnesses whose testimony she introduced, and who were present at the restaurant in the hours preceding the accident, were unanimous in stating that she was capable of performing her job duties and did not appear to be intoxicated. The claimant argues further that there was no evidence that she was unable to perform her job duties, and she contends, finally, that the mere fact of the accident should not be used to establish her intoxication.

As an initial matter, we do not agree with the claimant that the blood-alcohol test conducted at the time of her admission to the hospital was inaccurate, or that the results of the test were not established with sufficient clarity. Although it is true that neither a printout nor a photocopy of the results from the machine that performed the test appear in the record, the results were independently recorded in the claimant's medical files by different persons, a resident and a nurse, on separate occasions. Dr. Wolf, one of the claimant's treating physi-

cians, explained in his deposition that, from the nature of the records, it was likely that the person who made the second notation in the claimant's file was referring to the original record generated by the testing machine and did not have at hand the other person's earlier notation. Records such as these are an integral part of medical diagnosis and treatment; the Workers' Compensation Act recognizes the importance of such records and specifically allows their use as evidence in workers' compensation proceedings. (Ill. Rev. Stat. 1991, ch. 48, par. 138.16.) Moreover, while it is true that the expert testimony in this case acknowledged that errors may occur in blood tests, there was no evidence that the machine used here was not functioning properly at the time it analyzed the claimant's blood.

We also reject the claimant's related contention that the only inference that may be drawn from the evidence in this case is that the claimant was neither intoxicated nor impaired at the time of her accident. As the arbitrator noted, Judge Green, one of the witnesses who testified in the claimant's behalf, left the restaurant around 6:45 in the evening, some time before the claimant's accident occurred. In light of the medical testimony showing the claimant's blood-alcohol level to be 0.288 at the time of her admission to the hospital, we do not believe that the arbitrator was required to accept the remaining witnesses' testimony that the claimant was not intoxicated in the period before her accident. In addition, we note that two of the three remaining witnesses left before the claimant fell, although it is not clear from the record by how much time their departures preceded the accident. The evidence introduced by the employer established that the claimant's blood-alcohol level stood at 0.288 sometime after the accident, having perhaps been as high as 0.408. According to the testimony, even the lower amount would have impaired the

claimant's ability to function and could have been the sole cause of her fall. There was no evidence that the claimant was able to perform her job functions after she became intoxicated, assuming that she was intoxicated, as the medical testimony demonstrated and the arbitrator found.

The evidence in the case at bar could conceivably support a variety of inferences, and we will not substitute our judgment for that of the Commission merely because we might have drawn different inferences from the same record. (*Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 549; *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44; *Hoffman v. Industrial Comm'n* (1985), 109 Ill. 2d 194, 202. "[I]t is axiomatic that this court will not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor will we substitute our judgment for that of the Commission unless its findings are against the manifest weight of the evidence. [Citations.]" (*Castaneda v. Industrial Comm'n* (1983), 97 Ill. 2d 338, 341.) It is the Commission's role to judge the credibility of the witnesses, determine the weight of their testimony, and draw appropriate inferences from the evidence. (*Steiner v. Industrial Comm'n* (1984), 101 Ill. 2d 257, 260; *Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 405.) The Commission was free in the case at bar to accept the medical evidence introduced by the employer and to reject the claimant's contrary evidence.

For these reasons, we must reject the claimant's allied argument that the record fails to support the Commission's determination that intoxication was the sole cause of the claimant's accident and therefore barred her claim as a matter of law. Given the medical evidence introduced here, the Commission was not required to accept the claimant's assertion that she drank no

more than two sips of beer preceding her accident. Nor was the Commission compelled to adopt either of the alternative theories advanced by the claimant as explanations for the accident—that her fall was caused by the condition of the stairs, or by her catching her heel in the hem of her overcoat. It was appropriate for the Commission to conclude that if the claimant's testimony concerning her consumption of alcohol lacked credibility, so too did her explanation of the immediate cause of the accident, whether that is considered to be the condition of the staircase or the snagging of her heel in the hem of her coat. As we have noted, the Commission is in a superior position to gauge the credibility of the witnesses and to draw inferences from their testimony. The Commission concluded that intoxication was the sole cause of the accident. The record in this case supports the Commission's determination, and we will not overturn it.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*