NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                 Docket No. 80498--Agenda 23--May 1996.

      BRIAN TEGELER, Appellant, v. THE INDUSTRIAL COMMISSION (E.C.

                     Baker & Sons, Inc., Appellee).

                     Opinion filed October 18, 1996.

     CHIEF JUSTICE BILANDIC delivered the opinion of the court:

     The claimant, Brian Tegeler, filed an application for

adjustment of claim pursuant to the Workers' Compensation Act (Act)

(820 ILCS 305/1 et seq. (West 1992)) alleging that he sustained

injuries arising out of and in the course of his employment with

E.C. Baker & Sons, Inc. The arbitrator found in favor of the

claimant and awarded him compensation for temporary total

disability and permanent partial disability. The Industrial

Commission reversed the decision of the arbitrator, finding that

the claimant's application for adjustment of claim was barred by

the applicable statute of limitations. On administrative review,

the circuit court of Effingham County confirmed the Industrial

Commission's decision. The Industrial Commission division of the

appellate court, with one justice dissenting, affirmed the circuit

court. 276 Ill. App. 3d 1078. The appellate court certified the

cause for further review, and the claimant filed a petition for

leave to appeal (155 Ill. 2d R. 315(a)). We granted review and now

reverse the judgment of the appellate court. We remand the cause to

the Industrial Commission for further proceedings consistent with

the views expressed in this opinion.

                                   FACTS

     On July 29, 1987, Brian Tegeler, a 25-year-old well driller,

was injured in a motor vehicle accident in the course of his

employment with E.C. Baker & Sons, Inc. E.C. Baker & Sons, Inc.

(the employer), is owned and operated by Brian's uncle. Brian's

mother, Loretta Tegeler (Loretta), is the employer's corporate

secretary and works in the company's office. Shortly after the

accident happened, Loretta contacted the employer's insurance

agent, R.D. Hughes, and reported the accident. Robert Scybert

(Scybert), an independent claims adjustor for the employer's

insurance carrier, handled the matter on behalf of the carrier.

Sometime after the accident, Scybert contacted Loretta about

scheduling an appointment to take Brian's statement about the

accident. Scybert was in contact with Brian only once, when Scybert

took Brian's statement. All other contacts were between Loretta and

Scybert. Loretta acted on behalf of Brian and relayed any messages

from Scybert to Brian. Brian was not represented by counsel during

this time.

     Brian was treated by Dr. Carl Belber, an orthopedic surgeon,

for two years following the accident. Among other treatment, Dr.

Belber surgically repaired a partial laceration of Brian's left

ulnar nerve above his elbow, an injury caused by the accident.

Brian was also treated by Dr. Gaylin Lack, an orthopedic surgeon,

for three years after the accident. Dr. Lack determined that Brian

suffered a right shoulder separation as a result of the accident.

Brian saw Dr. Lack periodically from August 11, 1987, through

December 3, 1990.

     Around February of 1990, Scybert called Loretta and requested

that Brian undergo a medical examination by a Dr. Brown in

connection with his claim. Brian complied. Subsequent to the

examination, Scybert informed Loretta that he was waiting for Dr.

Brown's report.

     On May 23, 1990, Scybert relayed by telephone a settlement

offer for Brian's injuries to Loretta. Scybert offered to settle

Brian's workers' compensation claim for $7,346. Scybert explained

that this amount represented compensation for Brian's permanent

injuries to his left arm. Loretta responded by informing Scybert

that there were permanent injuries to Brian's right shoulder as

well. Scybert stated that it was his understanding that Brian's

right shoulder had no permanent injuries. Loretta disagreed. She

then told Scybert that she would obtain Dr. Lack's report regarding

the injuries to Brian's right shoulder. There were no further

communications between Scybert and Loretta or Brian following the

settlement offer.

     On December 15, 1990, the day before Loretta received the

report from Dr. Lack, Loretta was informed in a letter from the

employer's insurer that the settlement offer had been withdrawn and

the case closed. When Loretta spoke with Scybert after reading the

letter, he informed her that, because the statute of limitations

had expired, the case had been closed. Brian subsequently filed an

application for adjustment of his claim with the Industrial

Commission on January 4, 1991.

     At the hearing before the arbitrator, Scybert was questioned

about his conduct concerning the settlement offer he relayed to

Loretta on May 23, 1990. Scybert testified that the employer's

insurance company had instructed him to make the offer and await a

response. The insurance company had further instructed Scybert

that, if the statute of limitations should expire before the

settlement offer was accepted, then the offer was to be withdrawn.

Scybert indicated in his testimony that he knew the statute of

limitations would expire two months and five days after he made the

settlement offer to Loretta. Nonetheless, Scybert did not tell

Loretta or Brian when the settlement offer would terminate. Nor did

he inform Loretta or Brian that the statute of limitations would

soon expire.

     In addition, Loretta testified that no one ever provided Brian

with a copy of the Industrial Commission's instruction handbook,

which contains information regarding the rights and obligations of

employers and employees under the Workers' Compensation Act.

Loretta specifically requested a copy of the handbook from the

employer's insurance carrier immediately after the accident to give

to Brian. Loretta also informed Scybert that Brian did not have a

copy of the handbook.

     After considering the testimony of Brian, Loretta, and

Scybert, the evidence deposition of Dr. Lack and the office records

of Dr. Belber, the arbitrator found in favor of Brian. The

arbitrator found that the statute of limitations was "tolled." The

arbitrator based her finding on Scybert's actions with Loretta and

Scybert's failure to advise Brian of the expiration date of the

statute of limitations. The arbitrator awarded Brian $157.94 per

week for a period of 12 2/7 weeks for temporary total disability

and $142.15 per week for a period of 132.5 weeks for permanent

partial disability, as provided in section 8(e) of the Act (820

ILCS 305/8(e) (West 1992)). According to the arbitrator, the

permanent partial disability award was based on Brian's 45% loss of

use of his left arm and 20% loss of use of his right arm.

     The employer submitted a petition for review of the

arbitrator's decision to the Industrial Commission (Commission).

Two members of a three-member panel reversed the arbitrator's

decision and found in favor of the employer. The Commission

determined that Brian's application for adjustment of claim was

barred by the applicable statute of limitations (820 ILCS 305/6(d)

(West 1992)). The Commission found that the employer was not

estopped from asserting the statute of limitations as a defense

because the employer did not mislead or lull Brian into failing to

file his claim. The Commission also found that the employer had no

obligation to advise Brian when the statute of limitations would

expire on his claim.

     A dissent was filed by one member of the Commission. The

dissent focused on section 7110.60 of the Commission's rules, which

requires employers to deliver a copy of the Handbook on Workers'

Compensation and Occupational Diseases to any employee who reports

a work accident. 50 Ill. Adm. Code §7110.60 (1991). According to

the dissent, this rule is designed to insure that employees know

their statutory rights and obligations, including the statute of

limitations for filing a claim for workers' compensation. The

dissent pointed out that the evidence showed that Brian did not

receive a copy of the handbook and there was no evidence that he

knew or should have known the statute of limitations was running.

The dissent thus concluded that the claim was timely and the

arbitrator's decision should be affirmed.

     Brian sought review of the Commission's decision in the

circuit court. The circuit court confirmed the Commission's

decision, finding that it was not contrary to the manifest weight

of the evidence.

     The Industrial Commission division of the appellate court,

with one justice dissenting, affirmed the judgment of the circuit

court. The majority found that Brian failed to show that the

employer should be estopped from raising the statute of limitations

as a defense. 276 Ill. App. 3d 1078. On the other hand, the

dissenting opinion agreed with the conclusion of the dissenting

commissioner. 276 Ill. App. 3d at 1084 (Rarick, J., dissenting).

                                 ANALYSIS

     The issue before this court is whether estoppel prevents the

employer from raising the statute of limitations as a defense.

     The statute of limitations for filing an application for

adjustment of claim under the Act is set forth in section 6(d) (820

ILCS 305/6(d) (West 1992)). There is no dispute in this case that

the applicable statute of limitations expired three years after the

date of the claimant's accident. See 820 ILCS 305/6(d) (West 1992).

The claimant was injured on July 29, 1987. The claimant, however,

did not file his claim until January 4, 1991, a few months after

the expiration of the three-year limitations period. The claimant

argued before the Commission that the employer was estopped from

asserting the expiration of the limitations period as a defense.

The Commission rejected the claimant's argument. The claimant now

advances two arguments in support of his position that the employer

is estopped from raising the statute of limitations as a defense.

We address the two arguments separately.

     First, the claimant maintains that an employer has a duty to

advise a claimant of the statute of limitations under the Act.

According to the claimant, an employer that fails to so advise is

estopped from raising the statute of limitations as a defense. We

disagree. This court has held that an employer's failure to advise

a claimant of the statute of limitations for filing a workers'

compensation claim does not, in and of itself, create an estoppel.

City of Chicago v. Industrial Comm'n, 75 Ill. 2d 270 (1979); Pantle

v. Industrial Comm'n, 61 Ill. 2d 365 (1975). We adhere to this

court's prior holdings and reject the claimant's argument. We

therefore agree with the Commission's finding that the employer in

this case had no duty to advise the claimant when the applicable

limitations period would expire.

     The claimant next argues that the employer is estopped from

asserting the statute of limitations as a defense because of the

conduct and statements of the claims adjustor during the course of

settlement negotiations. We agree.

     Estoppel is an equitable doctrine that is invoked to

effectuate justice by precluding a party from benefiting from their

own wrongdoing. See 18 Ill. L. & Prac. Estoppel ch. 2, §22 (1956);

Byron Community Unit School District No. 226 v. Dunham-Bush, Inc.,

215 Ill. App. 3d 343, 348 (1991). The law is clear that an employer

in some circumstances may be estopped from asserting the statute of

limitations as a defense. George Young & Sons, Inc. v. Industrial

Comm'n, 66 Ill. 2d 220 (1977); Molex, Inc. v. Industrial Comm'n, 62

Ill. 2d 46 (1975); Kaskaskia Constructors v. Industrial Comm'n, 61

Ill. 2d 532 (1975); Pope v. Industrial Comm'n, 53 Ill. 2d 560

(1973). Estoppel applies when the conduct or statements of an

employer or its representatives lull the employee into a false

sense of security, thereby causing the employee to delay the

assertion of his or her rights. See George Young & Sons, Inc., 66

Ill. 2d at 225; Molex, Inc., 62 Ill. 2d at 50; Kaskaskia

Constructors, 61 Ill. 2d at 535; Pope, 53 Ill. 2d at 565; Dickirson

v. Pacific Mutual Life Insurance Co., 319 Ill. 311, 318 (1925).

     A clear example of how estoppel applies appears in Molex, Inc.

v. Industrial Comm'n, 62 Ill. 2d 46 (1975). In Molex, an employee

suffered an injury during the course of his employment. A

representative of the employer's insurance company required the

employee to be examined by a particular doctor. The employee

underwent the examination and the doctor forwarded his findings to

the insurance company. The insurer's representative then informed

the employee by telephone of the doctor's report and offered a

settlement. This settlement offer was made a little over one month

prior to the expiration of the statute of limitations. When the

employee "resisted" the offer, the representative recommended

another examination by the insurer's doctor, suggesting that such

an examination could lead to a better offer. The employee agreed,

and the insurance representative indicated that she would make the

appointment and call him back. Despite several telephone calls and

letters on the part of the employee over the course of two months,

the insurer's representative never responded. When the employee

spoke with another representative at the insurance company, he was

informed that the statute of limitations had run. Consequently, the

claimant was unable to file his application for adjustment of claim

until after the expiration of the statute of limitations. Molex, 62

Ill. 2d at 49.

     In Molex, this court found that the insurance representative's

discussion of settlement with the employee induced the employee to

reasonably believe that there would be a further settlement offer

after another examination by the insurance company's doctor. Molex,

62 Ill. 2d at 50. The record showed that the employee was waiting

for further instructions from the insurance representative

regarding an appointment with the insurance company's doctor. It

was not until after the expiration of the statute of limitations,

however, that the employee was informed that no further offer would

be made. Molex, 62 Ill. 2d at 50. As a result of reasonably relying

on the conduct of the insurance representative, the employee did

not file his claim for compensation until after the expiration of

the statute of limitations. This court, therefore, held that the

employer was estopped from asserting the statute of limitations as

a defense to the late filing of the claim. Molex, 62 Ill. 2d at 50.

In reaching this conclusion, this court reasoned that, when

settlement negotiations are conducted close to the expiration of

the statute of limitations, notice of a termination of the

negotiations should be given to the claimant a reasonable length of

time before the expiration of the limitations period. Molex, 62

Ill. 2d at 51. Such notice gives the claimant adequate time to

prepare and file an application for adjustment of claim. Molex, 62

Ill. 2d at 51. As this court stated:

          "Whether or not the result is intended, it is manifestly

          unfair for an employer or its insurance carrier, being

          versed in the operations of the Workmen's Compensation

          Act, to lead the employee to the very brink of the

          expiration date and then precipitously abandon him too

          late for him to preserve his claim." Molex, 62 Ill. 2d at

          51.

     In the case sub judice, the arbitrator estopped the employer

from asserting the statute of limitations as a defense. The

arbitrator based her finding in part on Scybert's actions with

Loretta, who acted on behalf of the claimant, during settlement

negotiations. The Commission reversed the arbitrator's finding and

refused to apply estoppel. The Commission found that the employer

through its insurer's claims adjustor did not mislead the claimant

into delaying the filing of his claim. We find that the

Commission's decision is inconsistent with Molex and is against the

manifest weight of the evidence.

     Here, as in Molex, the employer's representative lulled the

claimant into a false sense of security, thereby causing the

claimant to delay the assertion of his rights under the Act. The

record in the present case reveals that Scybert was the

representative of the employer's insurance company. Loretta was

acting on behalf of her son, the claimant. On May 23, 1990, Scybert

called Loretta and offered a settlement of $7,346, as compensation

for the claimant's permanent injuries to his left arm. Loretta did

not reject the offer, but simply inquired as to why it did not

include compensation for the claimant's injury to his right

shoulder. Scybert disputed the permanency of that injury. However,

when Loretta indicated that she would get a report from Dr. Lack

regarding that injury, Scybert acquiesced. His acquiescence

suggested that the settlement offer was open to negotiation on this

point. Consequently, Loretta was clearly left with the reasonable

belief that the insurer was holding the $7,346 settlement offer

open and that settlement negotiations would continue regarding the

right shoulder subsequent to Loretta's receipt of Dr. Lack's

report. In fact, after the settlement discussions on May 23, 1990,

there were no further communications between Scybert and Loretta

until December 15, 1990, when Loretta was informed that the

settlement offer was withdrawn because the limitations period had

expired.

     Moreover, Scybert admitted in his testimony before the

arbitrator that the employer's insurance company had instructed him

to make the settlement offer and await a response. Scybert was also

instructed that if the statute of limitations ran before the

settlement offer was accepted, then the settlement offer was to be

withdrawn. Scybert knew the limitations period would expire two

months and five days after he made the settlement offer.

Nevertheless, Scybert did not inform Loretta or the claimant that

the settlement offer would soon be withdrawn.

     All these facts show that Scybert misled Loretta into

believing that the settlement offer remained open and that

settlement negotiations would continue regarding the right shoulder

at least until Loretta's receipt of Dr. Lack's report. Scybert knew

when he commenced settlement negotiations that the settlement offer

and negotiations would terminate two months and five days later

when the statute of limitations expired (i.e., July 29, 1990).

Scybert, however, did not inform Loretta or the claimant of this

fact. Scybert thereby misrepresented the facts regarding an

existing time limitation on the settlement offer, which lulled the

claimant into a false sense of security that both the settlement

offer and settlement negotiations remained open. The claimant

reasonably relied to his detriment on this false sense of security

created by Scybert by delaying filing an application for adjustment

of claim until after he was informed that the settlement offer had

been withdrawn. See Kaskaskia Constructors, 61 Ill. 2d at 535 (the

claimant relied on the conduct of the employer's insurance

company's representative because the claimant withheld filing his

claim until receipt of the letter denying liability). The facts

further show that Scybert entered into settlement negotiations

close to the expiration of the statute of limitations and failed to

give the claimant notice of a termination of the negotiations a

reasonable length of time before the expiration of the limitations

period. As this court found in Molex, it would be unfair to permit

the employer's representative to conduct settlement negotiations

close to the expiration of the statute of limitations and then

abandon the claimant too late for him to preserve his claim. Molex,

62 Ill. 2d at 51. We therefore hold that the employer is estopped

from raising the statute of limitations as a defense.

     Because of our holding, we need not address the claimant's

other argument that the employer's failure to provide him with a

copy of the Commission's handbook pursuant to section 7110.60 of

the Commission's regulations (50 Ill. Adm. Code §7110.60 (1991))

also served as a basis for estoppel.

                                CONCLUSION

     For the reasons stated, we reverse the judgments of the

appellate and circuit courts and set aside the decision of the

Industrial Commission. We remand the cause to the Industrial

Commission for further proceedings consistent with the views

expressed in this opinion.

Appellate court judgment reversed;

                                         circuit court judgment reversed;

                                           Commission decision set aside;

                                                          cause remanded.

                                                                         

     JUSTICE McMORROW, dissenting:

     The majority today determines that the insurance adjustor in

the case at bar "misrepresented the facts regarding an existing

time limitation on the settlement offer" (slip op. at 8-9) and,

therefore, that the employer is estopped from asserting the statute

of limitations as a defense. This holding is contrary to the

express findings of the Industrial Commission that the claimant was

not misled during the settlement negotiations. There is nothing in

the record which indicates that the Industrial Commission's

findings are against the manifest weight of the evidence, as they

must be, for this court to overrule them. Moreover, by holding that

the employer is estopped from asserting the statute of limitations

as a defense under the facts of this case, I believe the majority

has effected a fundamental and unwarranted change in the area of

workers' compensation law. Accordingly, I dissent.

     The claimant, Brian Tegeler, filed an application for

adjustment of claim pursuant to the Workers' Compensation Act (820

ILCS 305/1 et seq. (West 1992)), for injuries which occurred during

the course of his employment with E.C. Baker & Sons, Inc. It is

undisputed that the application was filed after the statute of

limitations had run. Claimant's mother, Loretta Tegeler (Loretta),

works in the office of E.C. Baker & Sons, Inc., and handled

discussions for her son with the workers' compensation insurer,

which was represented by Robert Scybert (Scybert), an independent

insurance adjustor.

     During a brief hearing held before an arbitrator, Loretta

testified on direct examination that sometime "in June or first of

July," 1990, she had a telephone conversation with Scybert, during

which he made a settlement offer for claimant's injuries on behalf

of the insurer of approximately $7,346. Loretta gave the following

testimony describing the phone call:

               "A. He [Scybert] said he wanted to make Brian an

          offer on the permanent injuries to his left arm, and

          that's when he gave me the figure.

               Q. And what did you advise Mr. Scybert?

               A. I told him that Brian had other injuries; what

          about his shoulder?

               Q. Which shoulder was this?

               A. This is the right shoulder.

               Q. What did Mr. Scybert say?

               A. He said that the right shoulder apparently had

          gone back together and that it wasn't injured. And I

          said, oh, but it was.

               Q. What next [sic] did you do then?

               A. I said he could call Dr. Lack [one of claimant's

          physicians] and get the doctor's report [regarding the

          injury to claimant's right shoulder] and I would also

          contact him and get a letter from him.

               Q. Did you contact Dr. Lack?

               A. Yes, we did.

               Q. What was the purpose of contacting Dr. Lack?

               A. To get a letter on a statement of the injury to

          the right shoulder."

     Loretta also testified that Scybert did not make the

settlement offer in writing and that he did not advise her of the

date the statute of limitations would expire. Loretta repeated the

description of the telephone conversation given above during cross-

examination. This was the totality of Loretta's testimony on this

issue.

     Scybert testified before the arbitrator that on May 23, 1990,

he had a telephone conversation with Loretta, at which time an

offer was made to her son, through her, for permanent partial

disability. Scybert testified to the conversation as follows:

               "A. I simply made the telephone call. I made the

          offer--and I'd have to look up the amount of the offer at

          this time if that's necessary, but I did make the offer,

          and it was indicated to me that they would get back to me

          in reference to their decision to settle--or to finalize

          the claim.

               Q. Do you have a recollection whether the subject of

          a claimed injury to Brian's right shoulder was raised,

          either by you or by Loretta during that conversation?

               A. Not during that conversation.

               Q. Did that subject come up at any other time in

          your discussions with Mrs. Tegeler?

               A. I believe I saw in the file back in 1989 she had

          ask [sic] Dr. Lack for a doctor's report in reference to

          the shoulder. I had just received Dr. Lack's notes at

          that time indicating that the shoulder was fine. I have

          a copy of that in the file. And this was relayed to Mrs.

          Tegeler; however, she still chose to have the doctor

          provide her with a separate report. If that was ever

          received by them, I do not know.

                                   * * *

               Q. Okay. Can you--you may look at your file if you

          need to refresh your memory--identify when you discussed

          the question of the right shoulder injury and whether

          there was or was not permanency with Mrs. Tegeler?

               A. Just give me a quick second. I can do that, I

          think.

               Q. Sure.

               A. *** This is in reference--our December 30, 1988,

          report just after receiving Dr. Lack's report. Apparently

          I had a conversation with Mrs. Tegeler about that report

          and then I made a reference in the file here, noting that

          she did have some concern about the--not necessarily

          about the shoulder but wasn't as optimistic as the doctor

          had been in reference to his report--because I think you

          still had a concern at that point--and that's when she

          advised me that she would be writing to Dr. Lack for his

          report in reference to the shoulder.

               Q. And that, sir, to the best of your recollection

          was on or near December 30, 1988; would that be accurate?

               A. It would most likely be on that date or just

          previous to that date."

     Scybert also testified that he did not advise claimant or his

mother of the date the statute of limitations would expire.

According to Scybert, the insurance company instructed him to make

the settlement offer and await a response from claimant. If the

response came after the statute had run, which would have been two

months and five days after the May 23, 1990 phone call, then

Scybert was to advise claimant that the offer was withdrawn. This

was the full extent of Scybert's testimony concerning the phone

conversation he had with Loretta, and whether the injury to

claimant's right shoulder was discussed during that conversation.

     Based on the foregoing testimony, which is the only evidence

of record regarding the phone conversation which took place between

Scybert and Loretta, the Industrial Commission (the Commission)

reached the following conclusions:

               "The Commission notes that no provision of the

          [Workers' Compensation] Act nor any case in Illinois

          suggests that there is an affirmative duty by an

          adversarial party to advise a claimant when the statute

          of limitations runs on the claimant's cause of action.

          The creation of such a duty under the Act is the province

          of the legislature. THE FACTS OF THIS CASE DO NOT

          INDICATE THAT RESPONDENT DID ANYTHING TO MISLEAD

          PETITIONER SO AS TO ESTOP RESPONDENT FROM ASSERTING A

          DEFENSE UNDER THE STATUTE. THE ARBITRATOR MADE NO

          FINDINGS THAT RESPONDENT WAS GUILTY OF MISLEADING OR

          LULLING PETITIONER INTO FAILING TO FILE. THE COMMISSION

          FINDS THE TESTIMONY OF ROBERT SCYBERT TO BE CREDIBLE THAT

          RESPONDENT DID NOT MISLEAD PETITIONER INTO BELIEVING THAT

          ANY FURTHER ACTION ON ITS PART WOULD OCCUR. The

          Commission finds that Respondent had no obligation to

          advise Petitioner that his claim under the Act would

          expire.

               Based on the above, the Commission finds that

          Petitioner's claim was not timely filed and that

          therefore the Commission does not have jurisdiction over

          Petitioner's claim." (Emphasis added.)

     The scope of our review of the Commission's findings is quite

narrow. "It is the Commission's role to judge the credibility of

the witnesses, determine the weight of their testimony, and draw

appropriate inferences from the evidence. [Citations.]" Parro v.

Industrial Comm'n, 167 Ill. 2d 385, 396 (1995). We may not reweigh

the evidence, or "substitute our judgment for that of the

Commission merely because we might have drawn different inferences

from the same record. [Citations.]" Parro, 167 Ill. 2d at 396. Our

review is strictly limited to determining whether the findings of

the Industrial Commission are against the manifest weight of the

evidence. Parro, 167 Ill. 2d at 396. Under this standard, we may

reverse the findings of the Commission only if we determine that no

rational trier of fact could have reached the conclusions reached

by the Commission. Chief Judge v. American Federation of State,

County & Municipal Employees, Council 31, 153 Ill. 2d 508, 514

(1992).

     I submit that there is nothing in the record which indicates

that the Commission's findings are against the manifest weight of

the evidence, nor anything which would indicate, as the majority

asserts, that Scybert "misrepresented the facts regarding an

existing time limitation on the settlement offer" (slip op. at 8-

9). The clear import of Scybert's testimony is that the injury to

claimant's right shoulder was not discussed during the May 23,

1990, phone conversation. The Commission determined that Scybert's

testimony was credible. There is no basis for this court to reject

that determination and I note that the majority has offered none.

For the purposes of this appeal, we must accept that on May 23,

1990, Scybert made a settlement offer to Loretta, to which she

responded by saying that she would get back to him with her son's

decision to accept or reject the offer. Because an employer has no

duty to advise a claimant when the statute of limitations will

expire (City of Chicago v. Industrial Comm'n, 75 Ill. 2d 270

(1979); Pantle v. Industrial Comm'n, 61 Ill. 2d 365 (1975)), under

these facts, the employer should not be estopped from asserting the

statute of limitations as a defense.

     Furthermore, even if Scybert's testimony concerning the May

23, 1990, phone conversation were rejected in its entirety, there

is no basis for estopping the employer. Loretta never testified

that Scybert promised to contact Dr. Lack. Nor did she testify that

Scybert promised to hold the settlement offer open until she

received additional information from Dr. Lack. Thus, on the

dispositive issue in this case, i.e., whether there was any

statement or misrepresentation on the part of Scybert which lulled

claimant into a false sense of security regarding the time limit

for filing his claim, there is no conflict in the testimony.

Indeed, none of the members of the reviewing bodies below--the

arbitrator, the Commission majority, the dissenting commissioner,

the circuit court, the appellate court majority, and the dissenting

appellate court justice--found that Scybert "misrepresented the

facts regarding an existing time limitation" so as to mislead the

claimant into failing to timely file his claim. It is only this

court, without support in the record, that makes such a finding.

There is simply no evidence that Scybert made any

misrepresentations to claimant or his mother, nor any evidence that

claimant or his mother detrimentally relied upon anything said by

Scybert. Without these factors, the employer cannot be estopped

from asserting the statute of limitations as a defense. See, e.g.,

Schumann v. Industrial Comm'n, 61 Ill. 2d 241, 247 (1975).

     Despite the foregoing, the majority nevertheless concludes

that the Commission's findings are against the manifest weight of

the evidence. Relying solely on Loretta's testimony, the majority

reasons that Scybert's "acquiescence" to claimant's request for

further medical information regarding his injuries is sufficient to

estop the employer from asserting the statute of limitations as a

defense. Slip op. at 8. However, even if Loretta's testimony is

accepted to the exclusion of Scybert's, the majority's reasoning

remains unsound.

     As noted above, Loretta never testified to any misleading or

lulling statements made by Scybert during their phone conversation.

Therefore, in the context of this record, "acquiescence" can only

mean a failure to inform claimant of the limitations period, i.e.,

silence. To support its holding, the majority must necessarily make

the inference that Scybert's mere silence in response to Loretta's

statement that she would be obtaining further medical information

regarding claimant's injuries "suggested that the settlement offer

was open to negotiation on this point." Slip op. at 8. This

inference is squarely at odds with the Commission's finding that

Scybert "did not mislead [Loretta] into believing that any further

action on [his] part would occur." " `[I]t is axiomatic that this

court will not disregard or reject permissible inferences drawn by

the Commission merely because other inferences might be drawn ***.

[Citations.]' " Parro, 167 Ill. 2d at 396, quoting Castaneda v.

Industrial Comm'n, 97 Ill. 2d 338, 341 (1983); see also Pantle, 61

Ill. 2d at 369 (and cases cited therein). The Commission could

reasonably infer that Scybert's silence did not mislead Loretta

into believing that further action would be taken on his part.

Accordingly, there is no reason why this court should reject the

findings of the Commission that Scybert did not mislead Loretta

during the settlement negotiations.

     A further and more fundamental problem with the majority's

reasoning regarding Scybert's "acquiescence" is that it cannot be

reconciled with this court's prior decisions on the issue of

estoppel. This court has never held that an employer may be

estopped from asserting the statute of limitations as a defense

where the conduct of the claimant instigated the delay in filing

the claim. To the contrary, this court has consistently held that

to prevail on a theory of estoppel, a claimant must prove that

"some acts or representation" (Pantle, 61 Ill. 2d at 371) of the

employer or its representative created the delay in filing the

claim. See, e.g., George Young & Sons, Inc. v Industrial Comm'n, 66

Ill. 2d 220 (1977); Kaskaskia Constructors v. Industrial Comm'n, 61

Ill. 2d 532 (1975). In the case at bar, Loretta decided to obtain

further medical information regarding claimant's shoulder and chose

to delay making a decision regarding the settlement offer pending

receipt of that information. According to her own testimony,

Loretta instigated the delay in filing the instant claim, not

Scybert.

     Molex, Inc. v. Industrial Comm'n, 62 Ill. 2d 46 (1975), the

principal authority upon which the majority relies, is not to the

contrary. In Molex, a settlement offer was made to the claimant and

was rejected. The insurer's representative suggested that a better

offer might be forthcoming if the claimant were to see the company

doctor. The claimant agreed, and the representative stated that she

would schedule an appointment with the doctor and call him back.

The representative never called back, despite repeated telephone

calls and letters from the claimant. In the meantime, the statute

of limitations expired. Molex, 62 Ill. 2d at 49. This court

determined that under the circumstances, the employer was estopped

from asserting the statute of limitations as a defense. Molex, 62

Ill. 2d at 50. The majority's reliance on Molex is misplaced

because in that case, the employer's representative took

affirmative action--scheduling an appointment with the company

doctor--which lulled the employee into a false sense of security

and caused the claimant to delay filing the claim. Consistent with

other decisions of this court, it was the employer in Molex who

created the delay, not, as here, the employee.

     By failing to follow the underlying rationale of Molex, I

believe the majority has significantly and inappropriately altered

the principles of estoppel in the area of workers' compensation

law. The only conduct which Scybert engaged in here was to make an

offer for a final settlement approximately two months before the

statute of limitations was to run. Then, at most, he remained

silent in the face of Loretta's statement that she was postponing

her decision on whether to accept the offer pending receipt of

further medical information. If that action alone is enough to

estop the employer in the instant case from asserting the statute

of limitations as a defense, then there is no principled way to

conclude that other employers who make settlement offers and are

told that a response to those offers will be forthcoming, may not

also be estopped. Despite the majority's assertions to the contrary

(slip op. at 5), an affirmative duty to advise the adversarial

party of the statute of limitations has been imposed upon

employers. The duty imposed by the holding of the majority today

has far-reaching implications. Clearly, the imposition of such a

duty is within the purview of the legislature and not this court.

     Finally, I note that in Justice Rarick's dissent from the

appellate court opinion below, the sole issue discussed was whether

an employer's failure to provide a copy of the Handbook on Workers'

Compensation and Occupational Disease to an employee who reports a

work accident (see 50 Ill. Adm. Code §7110.60 (1991)), will prevent

the employer from asserting the statute of limitations as a

defense. See 276 Ill. App. 3d 1078, 1084 (Rarick, J., dissenting).

Justice Rarick certified this issue to this court. See 155 Ill. 2d

R. 315(a). Unlike the majority, I believe this court should have

addressed this important policy question. If, as the employer has

argued, it proved to be inappropriate to address this issue because

the handbook was never put in evidence by the claimant and is not

part of the record before us, then that fact should be acknowledged

and the case dealt with accordingly.

     For the foregoing reasons, I respectfully dissent.